MRS. A. C. BURNETT ET AL. V. J. P. ATTEBERRY, ADMINISTRATOR.

No. 2209. Decided April 3, 1912.

1.—Vendor's Lien—Release—Oral Agreement.

It seems that a vendor's lien can be released by oral agreement. (P. 125.)

2.—Same—Title Reserved in Vendor—Settlement for Purchase Money—Transfer of Legal Title.

The retention in his deed by the vendor of the superior title as security for the purchase money, does not leave in him such estate in the premises conveyed as requires a written release from him to make the title absolute in the vendee; such estate remains in the vendor only until payment of the purchase price; such payment, or its satisfaction under agreement by the acceptance of other security, divests the vendor of his estate. A release by him of the legal title to the vendee is only written evidence of the fact accomplished by the payment or discharge of the debt. (P. 125.)

3.—Same.

The payment of one-half of a purchase money note by one not personally bound thereon and his indorsement and assumption of personal liability for payment of the balance was sufficient consideration for a release of the lien by the holder of the note, enuring to a purchaser of the land for whose benefit such release was secured. The person so paying or assuming the debt for the benefit of the purchaser who took conveyance from the original vendee, though interested in the transaction, was not discharging a debt for which he was otherwise personally liable. The doctrine of liability of an undisclosed principal was not applicable to such transaction. Sanger v. Warren, 91 Texas, 472, followed. (Pp. 125, 126.)

4.—Limitation—Vendor's Lien—Purchaser—Adverse Possession.

A purchaser of land taking possession and holding same for five years under a registered deed under the belief that a lien given by his vendor to a previous one has been discharged, and with knowledge by the owner of such lien that he so holds, is in possession adversely to such lienholder, and not in trust subject to the latter's rights, and may assert limitation against them. Robertson v. Wood, 15 Texas, 5, and Smith v. Pate, 91 Texas, 596, followed. (Pp. 126, 128.)

**5.—Vendor's Lien—Estoppel.**

The holder of a vendor's lien who knowingly permitted another to purchase and pay for the land, from the previous purchaser giving such lien, under the belief that the same had been discharged, not only keeping silence to him in regard to its existence, but taking measures to conceal from him the fact that it was claimed, was estopped from asserting the lien against such purchaser. (Pp. 128-130.)

**6.—Case Stated.**

L and C conveyed land to B, reserving in the deed a lien to secure B's note for unpaid purchase money. N, who had become interested in the land and was negotiating a sale to J, paid off L's half interest in the note, and assumed personal liability to C for the balance, indorsing the note, in consideration of which C, by a verbal agreement, released the vendor's lien. J then purchased the land, believing the lien discharged, and receiving his conveyance from B, the original vendee. C continued to receive partial payments on the note from N, concealing its existence and any claim for a lien from J, whom he knew to be holding adversely to such lien. The note was transferred after maturity to S, and thereafter, the lien being barred by limitation, and the heirs of L and C, who were both dead, having transferred their interest in the land to the administrator of S, the assignee of the note, also deceased, such administrator sued for the recovery of the land. Held:

(1) The transaction between N and the holders of the note and the concealment from J by the latter of their claim to a lien operated as a settlement of same as a purchase money debt. They and the holders of the note to whom they released their supposed legal title were estopped from asserting same against the purchaser J and remitted to the personal indorsement of N for their security.

(2) The possession held by J was adverse to the interest of the holders of the note and to the legal title reserved to secure its payment, and not in trust subject to their rights, and, being continued for the statutory period, it barred the suit for the recovery of the land from him. (Pp. 122-130.)

Error to the Court of Civil Appeals, Fifth District, in an appeal from Hunt County.

Atteberry sued Mrs. Burnett, Newton, and Jones, for recovery and foreclosure on a vendor's lien note given by the first and indorsed by the second, the land being claimed by the last mentioned. He sought, in the alternative, to recover the land if denied a foreclosure. The case on a former appeal is reported in Atteberry, Admr., v. Burnett, 52 Texas Civ. App., 617; same case on certified questions, 102 Texas, 118. After reversal and remand, the suit was changed to one for the recovery of the land as owner of the superior title by virtue of an express lien reserved in the conveyance. Defendants had judgment which, on appeal, was reversed and rendered in favor of plaintiff, and appellee Jones obtained writ of error.

*Neyland & Neyland,* for appellant.—A vendor's lien expressly reserved in the deed and note usually exists until the debt is paid, but the same may be released and discharged as a lien on the land by a contract for the release and discharge of the lien. Where the parties agree that the lien is released and discharged by the vendor the note ceases to be a lien on the land. Porter v. Metcalf, 84 Texas, 472; Wilcox v. First National Bank, 93 Texas, 322.

The possession of a vendee holding under an executed conveyance from the purchaser in an executory contract and openly and notoriously asserting absolute proprietorship in himself, under his con-

veyance, within the knowledge of the original vendor is adverse to the title of the latter, and becomes a complete bar thereto in five years. Robertson v. Wood, 15 Texas, 1; Smith v. Pate, 91 Texas, 599.

A vendor who is informed by the agent of his vendee that he is attempting to sell the land on which the vendor holds an express lien to secure the unpaid purchase money note, to a third person as free from all incumbrances and charges, and agrees, with the said agent, that if he will indorse the note he, the vendor, will look to the said agent personally for the payment of said note, and will keep the existence of the said note from the purchaser, the vendor knowing at the time, that the purchaser is trusting and relying on the representations of the agent as being true, does accept the indorsement of the said agent, and stands by, keeps quiet and keeps the existence of the said note from the purchaser until such time as the agent becomes notoriously and hopelessly insolvent, is estopped from enforcing any claim he might have had against the land against the purchaser. Fielding v. Gwynn, 63 Texas, 637; Whitesell v. Texas Fair Assn., 27 S. W. 314.

*Thompson & Mead,* for defendant in error.—The superior title to said land remained in the said A. Cameron and C. A. Langford, and the said Mrs. A. G. Burnett acquired only an equity in the same by virtue of her said deed. Atteberry v. Burnett, 52 Texas, Civ. App., 617; Atteberry v. Burnett, 102 Texas, 118; White v. Cole, 87 Texas, 500; Hamblen v. Folts & Walsh, 70 Texas, 132; Russell & Seisfeld v. Kirkbride, 62 Texas, 457; Catlin v. Bennett, 47 Texas, 170; Rogers v. Blum, 56 Texas, 6.

The superior title remaining in the vendors jointly, the note being unpaid, could be released only by an instrument in writing signed and acknowledged by each of the said vendors. Rev. Stats., arts. 624, 2543; Engelbach v. Simpson, 12 Texas Civ. App., 188; Loan Association v. Ghio, 62 S. W., 560; Ward v. Stuart, 62 Texas, 333; Ann Berta Lodge v. Leverton, 42 Texas, 18; Eason v. Eason, 61 Texas, 225; Dial v. Crain, 10 Texas, 444; 29 Am. & Eng. Enc., 880.

Jones acquired no greater right than that held by his grantor, succeeded only to her equity, and took the land subject to the superior title. The recital of the note in the deed to his grantor was notice to him that said note was an outstanding lien upon his land. Peters v. Clements, 46 Texas, 114; Jackson v. Elliott, 49 Texas, 62; Bryan v. Crump, 55 Texas, 1; Moore v. Scott, 38 S. W., 394; Willis v. Gray, 48 Texas, 469; Renick v. Dawson, 55 Texas, 109; Christian v. Hughes, 12 Texas Civ. App., 622; Dean v. Hudson, 1 Posey, U. C., 365; Runge v. Gilbough, 87 S. W., 832; Gilbough v. Runge, 99 Texas, 539.

The note being unpaid, Langford could not waive or release the vendor's lien upon said land by a verbal agreement. Rev. Stats., arts. 624, 2543; Hanks v. Enloe, 33 Texas, 627; Trammel v. McDade, 29 Texas, 360; Dorn v. Dunham, 24 Texas, 376; McKey v. Welch, 22 Texas, 396; Russell v. Kirkbride, 62 Texas, 455.

The contract alleged to have been made between Newton and Langford whereby the latter is claimed to have waived or released the vendor's lien upon the land in controversy was without a valuable

consideration and is not binding ·in law. Richarz v. Wolcken, 34 Texas, 103; Robertson v. March, 42 Texas, 151; Williams v. Graves, 7 Texas Civ. App., 356; Insurance Co. v. Texarkana, etc., 15 S. W., 34; Thomas v. Peters, 52 Texas, 140; Travis v. Duffau, 20 Texas, 49; Mayfield v. Cotton, 21 Texas, 1.

Jones having purchased the land in controversy from Mrs. Burnett, the vendee of Cameron and Langford, he was entitled under his deed to the possession thereof, and such possession was not notice of any hostile claim as against the holders of the superior title. Runge v. Gilbough, 87 S. W., 832; Gilbough v. Runge, 99 Texas, 539; Whitehead v. Fisher, 64 Texas, 642; Wright v. Thompson, 14 Texas, 561; Jones v. Hutchinson, 21 Texas, 376.

Jones' possession of the land in controversy is construed in law to be in subordination to the superior title of Cameron and Langford until he openly repudiated such title, and declared his hostility to the same. Runge v. Gilbough, 87 S. W., 832; Gilbough v. Runge, 99 Texas, 539; Peters v. Clements, 46 Texas, 114; Jackson v. Elliott, 49 Texas, 62; Bryan v. Crump, 55 Texas, 1; Moore v. Scott, 38 S. W., 394; Willis v. Gay, 48 Texas, 469; Johnson v. Lockhart, 40 S. W., 640, 16 Texas Civ. App., 32; Keys v. Mason, 44 Texas, 144.

MR. JUSTICE DIBRELL delivered the opinion of the court.

This suit was brought by J. P. Atteberry, administrator of the estate of O. W. Spradling, deceased, against the defendants, Mrs. A. G. Burnett, F. M. Newton and W. F. Jones upon a vendor's lien note originally for $1,025, dated February 10, 1898, given for part of the purchase money due for the property the subject of this controversy, the said lien being specially retained in the deed of conveyance. The note was alleged to have been given by the defendant, Mrs. A. G. Burnett, to A. Cameron and C. A. Langford, her vendors, and was due on or before January 1, 1899, bearing interest at ten percent from date and providing for ten percent attorney's fees. The defendant, F. M. Newton, was sued as endorser of the note and the defendant, W. F. Jones, was alleged to be setting up some sort of a claim to the property against which the suit was directed. Plaintiff claimed that his decedent was the owner of the note sued on by regular transfer from the original owners, and that after his said decedent became the owner of said note the wife and sole legatee of A. Cameron, one of the original owners of said note, and Mrs. E. C. Langford and J. D. Langford, the wife and son and sole heirs of C. A. Langford, deceased, the other original owner of said note, conveyed to his said decedent all their right, title and interest in and to the property in controversy, thereby making the said O. W. Spradling the owner of the vendor's lien note together with the superior title to the conveyed premises. The relief sought was in the alternative for judgment on the note with foreclosure of the vendor's lien, or if the court should hold the note was barred by the statute of limitation, then for the property. Subsequently by amendment plaintiff sought only to recover the land.

The defendant, Mrs. A. G. Burnett, answered by a plea of general

denial and the statute of limitation of four years in bar of recovery against her on the note upon which the suit was originaly based.

Defendant, F. M. Newton, answered admitting that the debt sued on was his obligation, having become such by special agreement with the owners of the note in consideration that they would release the vendor's lien against the property in controversy.

Defendant, Jones, pleaded the general demurrer, general denial, and specially the statute of limitation of four years against recovery of the note sued on, the release of the vendor's lien against the land in controversy by C. A. Langford upon consideration that F. M. Newton pay in cash the half interest in said note owned by A. Cameron and become liable personally for the payment of the balance due on said note, estoppel *in pais* against plaintiff to assert the vendor's lien against the land in controversy, the statutes of three, five and ten years limitations and other special pleas not necessary to mention.

The cause was tried by the court with the assistance of a jury and judgment rendered for the defendants. Upon appeal to the Honorable Court of Civil Appeals (J. P. Atteberry, Admr., v. Mrs. A. G. Burnett, et al., 130 S. W., 1028), the judgment of the trial court was, on June 25, 1910, affirmed in part and reversed and rendered in part, the effect of such judgment being to give one-half of the property to plaintiff, as administrator of the estate of C. A. Langford, deceased, and the other half to the defendant, Jones.

That a more perfect understanding of the issues in the case may be had we reproduce the findings of fact and conclusions of law of the learned trial judge, which form the basis of his judgment:

"On February 10, 1898, C. A. Langford and wife and A. Cameron executed a deed in writing, conveying to Mrs. A. G. Burnett, one of the defendants herein, the land in controversy. Said deed recited a cash consideration paid by Mrs. A. G. Burnett, and described a certain promissory note executed by her, on said date, for $1,025 with interest from date at the rate of ten percent per annum, payable to C. A. Langford and A. Cameron, and to become due on the 1st day of January, 1899, and which deed and note reserved the vendor's lien upon the premises in controversy to secure the payment of said note. On the 12th day of January, 1907, said A. Cameron and C. A. Langford, both being deceased, Mrs. P. A. Cameron, E. C. Langford and J. D. Langford, executed and delivered to the plaintiff, as administrator of the estate of O. W. Spradling, deceased, a quitclaim deed to the property in controversy.

"On January 2, 1899, F. M. Newton paid to C. A. Langford, for the use of A. Cameron, the sum of $558.05, it being one-half of the said note and interest on the said date. On said last named date, and at the time of the said payment, the said F. M. Newton informed the said Langford that he was on a trade to sell the property to the defendant, F. W. Jones, and that he could not do so unless the vendor's lien, named in the deed from Langford and wife and A. Cameron to Mrs. A. G. Burnett was released or waived. The said Newton offered to the said Langford some vendor's lien notes on other property in settlement of the remainder of the said notes but that the said Langford refused to receive same as a payment on the said

note, but he, at the time, agreed that if the said F. M. Newton would endorse the said note and make it his own note that he would look to the said Newton personally for the payment of the same, and the said Langford then and there waived the vendor's lien, which secured the said note, on the property in controversy. The said Newton then and there endorsed the said note and the said Langford told the said Newton that he could go ahead and make his said trade with the said Jones, free from any lien reserved in the said deed to Mrs. A. G. Burnett, or in the note executed by her.

"On April 12, 1901, Newton paid to Langford the sum of $75.00 on the note. On June 17, 1901, he paid the said Langford the sum of $107.50 on said note. On October 24, 1901, he paid to the agent of said Langford the sum of $100.00. Up to the date of the last named payment there had been no transfer of the said note to the said Spradling, deceased. During the whole time that had elapsed between the 2d day of January, 1899, and the date of the death of the said Langford, he had kept the existence of the said note a secret from the said Jones and had been looking to and receiving payment from the said Newton only. He instructed his agent to present the note to the said Newton, when he, Langford, was away from home in the fall of 1901, and not to let the said Jones know anything about the note, and that the said agent collected the last named credit on said note and did not let the said Jones know anything about the existence of said note according to the instruction of said Langford. Langford knew that the said Jones went into possession of the said property in controversy on the 30th day of March, 1899, with the honest belief that he held a title free from any incumbrance and that his possession was adverse and hostile to all the world and said note was not transferred to O. W. Spradling, deceased, until long after its maturity and that Langford was the agent for the collecting of the note after O. W. Spradling became the owner of same for many years and up to the death of the said Spradling, which occurred on August 1, 1905. Langford and one William Matthews were the executors of the will of the said Spradling until July 18, 1906, when they resigned and on the 23d day of July, 1906, J. P. Atteberry qualified as temporary administrator of said estate and on the 8th day of September, 1906, qualified as permanent administrator of the said estate of O. W. Spradling, deceased, with will annexed. The defendant, Jones, was not informed by said Langford or any one else of the existence of said note until November 12, 1906. F. M. Newton was solvent and financially responsible until after the year 1904, but he was insolvent when this suit was filed."

Upon the foregoing facts the trial judge concluded as a matter of law "that the waiver of the vendor's lien made by C. A. Langford on January 2, 1899, in consideration of F. M. Newton indorsing the note and becoming personally liable thereon was valid and binding and that the property was freed from the vendor's lien. That the possession taken by W. F. Jones on the 30th day of March, 1899, was maintained by him in hostility to the alleged vendor's lien note, within the knowledge of C. A. Langford of his adverse claim, entitled the defendant Jones to the benefit of the statutes of limitations

of five years. That the said Langford's conduct for more than six years in keeping the note a secret from defendant Jones, and the fact that O. W. Spradling purchased the note long after its maturity and Langford being his agent until his death, and one of his executors, estops the plaintiff from recovering the land, from which facts and conclusions I render judgment for all of the defendants.''

In addition to the foregoing findings of fact the Court of Civil Appeals found that the appellee, Jones, was in possession of the land in controversy, and had been continuously since the date of his purchase and that he had paid all taxes assessed against said property for every year since his purchase.

The first question to be considered is whether the facts as contained in the record justify the conclusion of the trial court that the vendor's lien against the land in controversy was released by C. A. Langford. It is not important to determine whether or not a vendor's lien may be released by verbal agreement, but if that question is presented by the facts of the case we agree with the Court of Civil Appeals that such lien may be released by verbal agreement. While the retention of the vendor's lien in the deed of conveyance retains in the vendor the superior title to the land conveyed it is not the retention of such an estate in the conveyed premises as requires a written release to make the title absolute in the vendee, but is such an estate only as remains in the vendor until payment of the purchase price. The payment of the purchase money, or its satisfaction under agreement by the acceptance of other security, divests the vendor of the estate in such property. This result arises from the discharge of the debt. Without the existence of the debt for the purchase money the retained estate has no foundation for its existence. The moment the debt is paid the lien is satisfied and the retained title or estate is released *ipso facto*. The function of the release is practically in such cases nothing more than the written evidence of the payment of the purchase money and the consequent discharge of the lien. It adds nothing to the purchaser's title. After the payment of the purchase money the vendor has no claim on the land whether he has or not executed a release. Beyond its effect to serve as notice and enduring evidence of the payment of the debt for the purchase money the release bears no legal import. So that when reduced to a proper analysis the question as to whether a release of the vendor's lien as applied to the facts of this case may be made by verbal agreement is wholly immaterial.

When Newton paid to Langford one-half of the note in discharge of Cameron's interest therein and gave his personal obligation to pay the balance of said note by endorsing same, in consideration that Langford would release the vendor's lien, the effect of such agreement was to discharge the lien against said property in favor of Jones for whose benefit the release was secured. Porter v. Metcalf, 84 Texas, 468; Houston v. Dickson, 66 Texas, 79; Wasson v. Davis, 34 Texas, 167.

We think the agreement of Langford with Newton to release or waive the vendor's lien was supported by a valid consideration. The Court of Civil Appeals held that there was no valid consideration

supporting the agreement to release or waive the vendor's lien upon the theory that because the property, while conveyed to Mrs. Burnett and her obligation given for payment of the purchase money, the property was, as a matter of fact, purchased for the benefit of Newton, and therefore he being personally liable for the debt, did no more in giving his endorsement and personal obligation to pay the note than could have been required of him by law. If this was true as a legal proposition there would clearly be no valid consideration to support the agreement, but we are not prepared to agree with such view. On the contrary we do not think Langford had any cause of action against Newton upon which there could have rested a personal obligation to pay the note executed by Mrs. Burnett to whom the deed had been given and by whom the note had been executed. At the time of the sale and conveyance of the property by Cameron and Langford they thought the transaction was being had with Mrs. Burnett and were not in any manner deceived, but were willing to sell and convey her the property and accept her obligation to pay the balance of the purchase price. This subject was not discussed by the learned judge who wrote the opinion of the Court of Civil Appeals, but we can not understand upon what principle the holding was based unless upon the theory of the liability of an undisclosed principal. That personal liability does not arise in this character of cases has been determined by this court in the case of Sanger v. Warren, 91 Texas, 472, in which Judge Denman wrote a learned opinion holding that where certain property was conveyed by Bowser et al. to Rees, who paid a part of the consideration and assumed the payment of certain vendor's lien notes standing against the property, Sanger, who was the real purchaser, but undisclosed, could not be held personally for the payment of said note. Whatever may be the general rule of law authorizing the election of proceeding against the undisclosed principal in a contract made by his agent, the rule is not applicable to conveyances of real estate and obligations given for the payment of the purchase money. This being true it follows that when Newton paid one-half of the note executed by Mrs. Burnett and gave his personal obligation to pay the balance, there was a valid consideration moving Langford to discharge or waive the vendor's lien. Part payment of the note and the additional personal security, however slight, was a sufficient consideration to bind the agreement. 34 Cyc., p. 1052.

The next question for consideration is that of limitation. If the statute of limitation is applicable to the facts of this case the plaintiff would be barred from recovery, as there is no issue presented in the record as to the execution of the deed by Mrs. Burnett conveying the land to the defendant, Jones, and its proper record for a period of more than five years before the institution of this suit, the payment of taxes and possession. The only fact remaining to constitute Jones' title good, as against Langford, is one of adverse possession. If in fact Jones' possession of the land in controversy was adverse to Langford, then his title was good against Langford and those claiming under him. We fully recognize the rule of law and its ex-

pediency that makes the possession of a vendee that of the vendor under an executory contract, and that the same rule is applicable where a link in the title of the person claiming the adverse possession is such executory contract. On the other hand, we recognize the rule that "the possession of the vendee under an executory contract may become so adverse that he may acquire a title by limitation," and no less true where the person in possession claims title under a link that is executory. Batts' Annotated Civil Statutes, sec. 11936; Howard v. McKenzie, 54 Texas, 171.

The general rule has its exceptions, and the facts of this case as conceded and shown by the record bring it clearly, we think, under the exception. Jones did not go into the possession of the premises in controversy under an executory contract, but under an executed absolute conveyance to himself, without actual knowledge of the vendor's lien in favor of Langford and such possession and adverse claim of Jones was known to Langford. While Jones was chargeable with constructive notice of such lien, yet his possession was adverse to Langford who knew of it, and who designedly kept secret from Jones the existence of the vendor's lien note and lien. Spradling's purchase of the note was after its maturity and therefore subject to all defenses as if owned by Langford. So that independent of the release or waiver of the lien any rights Langford might have had in the property were lost by the operation of the statute of limitations. At the very moment Jones purchased the property Langford was made aware of the fact that Jones would not purchase unless he was assured the title was good and free from all liens of every character. He never notified Jones that he claimed a lien against the property and never looked to Jones for the payment of the note he held against the property, but, on the contrary, when he was expecting to be absent from Greenville he requested his agent to collect the note from Newton and to be careful not to let Jones know that the note was in existence. He knew that Jones was claiming the land adversely to the world. Under the facts of this case it is inconceivable upon what principle of law or justice it can be said the statute of limitation was held in abeyance. No well grounded principle or fiction of the law can be invoked to stay the operation of the statute of limitation. It will not be a sufficient answer to say that under the doctrine of executory conveyances the condition of a trust relation existed, for that relation was repudiated at the very threshhold. It was made plain to Langford at the time of Jones' entry upon the premises that it was adverse to any claim against the property that Langford might assert.

The precise question here under consideration was determined, in accord with our view, in the case of Robertson v. Wood, 15 Texas, 5. What was there said by Judge Wheeler is applicable to the facts of this case, and we quote therefrom the following: "But the question here is, whether the possession of the vendee, holding under an executed conveyance from the purchaser in the executory contract, and openly and notoriously asserting absolute proprietorship in himself under his conveyance, within the knowledge of the original vendor, is adverse to the title of the latter. And this, it is conceived, is a

question which it will not be difficult to answer upon principle and authority.

"The purchaser in an executory contract for the sale of land is the trustee of his vendor; and while he sustains this relation, his possession is not adverse, and the statute of limitations does not run in his favor. But even an express trust may be determined by the act of the trustee. And this will occur when he denies the right of the *cestui que* trust, and assumes absolute ownership of property he holds in trust, adversely to and within the knowledge of the *cestui que* trust. There can be no stronger case put, of an express, continuing trust, than that which subsists in the relation of landlord and tenant. 'The principle of estoppel applies to that relation, and operates in its full force to prevent the tenant from violating that contract by which he obtains and holds possession.' (3 Pet., 47.) He can not change the character of a tenure by his own act merely, while the relation subsists, so as to enable him to hold against his landlord. Yet, by his own act, he can put an end to the relation. If he disclaims to hold under his lease, he becomes a trespasser, and his possession is adverse. When he publicly disclaims his landlord's title and professes to hold under a title hostile to that of his landlord, the trust relation is determined, and the statute of limitations will begin to run from the time of such disclaimer. (Id; and see Turner v. Smith, 11 Texas, 620, and cases cited.)

"Here the possession was taken and held by the defendant, under an executed contract, conveying absolutely the fee; and was accompanied by an assertion of right, and claim of absolute proprietorship, openly and notoriously, and within the actual knowledge of Clark, under whom the plaintiff claimed.

"If this did not put an end to the trust relation created by the executory contract of purchase; if the possession thus held was not adverse to the plaintiff's title, it would be difficult to conceive of anything which would put an end to that relation and render the possession of the tenant adverse. 'If' (says the Supreme Court of the United States, in Boone v. Chiles, 10 Pet., 223), 'the entry was by purchase, and the purchaser claims the land in fee, he is not a trustee; his title, though derivative from and consistent with the original title of the plaintiffs, is a present claim in exclusion of and adverse to it. The vendee in fee derives his title from the vendor; but his title, though derivative, is adverse to that of the vendor; he enters and holds for himself.' The vendee acquires the property for himself, and his faith is not pledged to maintain the title of the vendor."

An interesting and pertinent discussion of this question will be found in the case of Smith v. Pate, 91 Texas, 596, in which the present chief justice wrote the opinion, approving the holding in the case of Robertson v. Wood, above cited.

We think the above conclusion of law by the trial court on the question of limitation of five years should be sustained.

The remaining question relates to an estoppel, and we think the facts as found by the trial court amply support the conclusion of law by that court on this question. The evidence supports the finding that at the time Newton went to Langford to secure a release of the

vendor's lien he was the agent of Jones, and informed Langford that Jones wanted to purchase the property, but would not do so unless it came to him free from all liens; that the trade could not be made unless such lien was released or waived. And with the full knowledge that Jones had purchased the property on which he had a lien Langford suffered Jones to pay for the property under the belief that he was getting a good title free of liens of any sort, and to negotiate a loan on the property and make on it valuable improvements, and while they lived in the same town for the space of six years or more, he not only did not inform Jones of his lien, but purposely assisted in keeping the knowledge of his lien from Jones. This is but a summary of the facts relating to the action of Langford, and a more comprehensive view of the facts may be acquired by reading the findings of the trial court herein set out. It remains but to apply the well established principles of equity to these facts to sustain the plea of estoppel, keeping in mind that Langford was appealed to for a release or waiver of his lien and knew that Jones was being induced to purchase the property under the representation that no liens existed against it. He did not advise Newton to make known to Jones that such lien existed.

An estoppel may arise as effectually from silence, where it is a duty to speak, as from words spoken. One may be induced to act to his injury on account of the silence of one interested in a transaction, and when such course of action is permitted with the knowledge of the interested party or induced by silence or tacit acquiescence, the doctrine of estoppel may be invoked. The rule is tersely but accurately stated by Mr. Bigelow in the following sentence: "A representation in the nature of a negative of one's rights may as we have seen, arise from pure silence; and from pure but *misleading* silence with knowledge, or passive conduct joined with a duty to speak, an estoppel will arise." (Bigelow on Estoppel, p. 564; see cases cited in footnote 3.)

Again, the same author, page 565, quoting from Lord Denman in Pickard v. Sears, says: "A party who negligently or culpably stands by and allows another to contract on the faith and understanding of a fact which he can contradict can not afterwards dispute that fact in an action against the person whom he has himself assisted in deceiving."

As said by Chancellor Kent: "There is no principle better established in this court, nor one founded on more solid considerations of equity and public utility, than that which declares that if one man knowingly, though he does it tacitly by looking on, suffers another to purchase and expend money on land under an erroneous opinion of title, without making known his claim, he shall not afterwards be permitted to exercise his legal right against such person. It would be an act of fraud and injustice, and his conscience is bound by this equitable estoppel." Wandell v. Van Rensselaer, 1 Johns. Ch., 353.

No less forceful is the principle of estoppel as here contended for laid down by Justice Swayne in the following language: "The appellee insists that the record discloses a case of estoppel in *pais,* and that the appellant is thereby barred from maintaining the claim which he seeks to enforce in this litigation. The principle is an important one

in the administration of the law. It not infrequently gives triumph to right and justice where nothing else could save them from defeat. It proceeds upon the ground that he who has been silent as to his alleged rights when he ought in good faith to have spoken, shall not be heard when he ought to be silent. Bank of U. S. v. Lee, 13 Pet., 107.'' (Morgan v. Chicago & A. R. Co., 96 U. S., 716.)

''Estoppel by silence arises where a person who by force of circumstances is under a duty to another to speak, refrains from doing so and thereby leads the other to believe in the existence of a state of facts in reliance upon which he acts to his prejudice.'' (16 Cyc., 681; footnote 10.)

The doctrine laid down in the foregoing authorities is undoubtedly approved by our own court. Love v. Barber, 17 Texas, 318; Ragsdale v. Gohlke, 36 Texas, 287; Bynum v. Preston, 69 Texas, 288; Waggoner v. Dodson, 96 Texas, 423 (17 S. W., 517).

Actuated by the law as understood by us, we are compelled with great deference to the views entertained by the Honorable Court of Civil Apeals to affirm that portion of the judgment affirmed by it and to reverse that portion of its judgment reversing and rendering judgment for appellant in that court, and in so ordering, the judgment of the trial court will be in all respects affirmed.

*Reversed in part and judgment of District Court affirmed.*