## HIGGINS et al. v. SOUTH TEXAS DEVELOPMENT CO. et al. (No. 9284.)

Court of Civil Appeals of Texas. Galveston. June 28, 1929. Dissenting Opinion July 3, 1929.

Rehearing Denied Oct. 3, 1929.

John B. Warren, of Houston, for appellants.

Harry Holmes, of Houston, and A. R. Rucks, of Angleton, for appellees.

PLEASANTS, C. J. This is an action of trespass to try title, brought by appellees against appellants to recover title and possession of a tract of 91 acres of land on the John McCloskey league in Brazoria county. The suit was originally brought by appellee development company, by petition filed on February 1, 1910, against Pompey Higgins and Joseph Higgins.

By amended petition, filed on August 3, 1910, Hannah Ward and husband, Anthony Ward, and Eliza Ward and husband, Chris Ward, and H. Masterson were made defendants. This petition alleged that B. T. Masterson was the common source of the title claimed by plaintiff and defendant, and further alleged that plaintiff held title under a warranty deed from defendant H. Masterson, and prayed for judgment against H. Masterson on his warranty in event the other defendants recovered title to the land.

The defendants Joseph Higgins and Hannah Ward and Eliza Ward, joined by their respective husbands, answered on February 13, 1911, by plea of not guilty, and specially pleaded that the land in controversy was purchased and paid for by their father, Pompey Higgins, on May 14, 1881, during the lifetime of their mother, Maria Higgins, and was occupied by their father and mother continuously as their homestead until the death of their mother in August, 1890; that immediately after the purchase of the land by Pompey Higgins, he and his wife, Maria, together with their children, these defendants, all went upon the land, made permanent and valuable improvements thereon, and occupied it as their home; that after the death of their mother these defendants continued to occupy the land, claiming a one-half interest therein by inheritance from their mother, and by agreement between themselves and their father, respective portions of the land were set aside to each of the defendants for homestead purposes, and the remainder was thereafter held by them as tenants in common. This answer in a very general way describes the tracts claimed to have been separately held by defendants under the agreed partition just mentioned. These defendants further pleaded the statutes of limitation of 5 and 10 years.

The defendant H. Masterson, by answer filed on July 14, 1916, after a general demurrer, general denial, and plea of not guilty, specially pleaded that he had title to the land at the time he conveyed to plaintiff, and that, if defendants have acquired title by limitation to any portion of the land, he could not be held liable on his warranty for the title thus lost by plaintiff. No further pleading was filed in the suit until August 17, 1925, when appellee the Bankers' Mortgage Company, filed a second amended petition, in which it is alleged that the mortgage company had acquired all of the interest of the original plaintiff, development company, in the land. This amended petition names the defendants in the original suit, with the substitution of Jacob Higgins, Carey Higgins, and Arthur Higgins as heirs of their deceased father, Pompey Higgins, and T. S. Masterson, Rowena Cage, and Elliot Cage, executors of the will of H. Masterson. The prayer of the petition is for recovery of the title and possession of the land against all defendants, and, in event plaintiff fails to recover on its title from H. Masterson, that it have judgment on its warranty against the executors of H. Masterson.

On July 26, 1926, the appellee mortgage company filed a third amended petition, alleging the same cause of action set up in its former petition and against the same defendants, and further pleading title to the land in controversy under the 3, 5, and 10 year statutes of limitation. The defendants, on August 4, 1926, filed a motion to dismiss the suit on

the ground of abandonment. The appellee mortgage company filed answer to this motion, denying the allegations of abandonment, and specially pleading all of the former proceedings in the suit, including the orders continuing the cause from term to term, and also pleading in bar of the motion a judgment of the district court of Harris county, denying appellants an injunction to prevent the taking by appellee of depositions in this case, said judgment having been rendered in a suit brought by appellants against the appellee to restrain the taking of the depositions on the ground that this suit had been abandoned by appellee.

Several amended pleadings were subsequently filed, some of which are lengthy and contain involved statements of fact, but none of them change the nature of the suit or the substance of the issues involved, except as may be hereinafter indicated. Before the cause went to trial, the plaintiff dismissed its suit against the Masterson executors. The trial with a jury resulted in an instructed verdict in favor of the mortgage company for the land, and a judgment in accordance with the verdict followed. The record discloses the following undisputed facts:

On March 4, 1881, Branch T. Masterson, who was the common source of title, conveyed to Pompey Higgins a tract of 131 acres of land, of which the 91 acres in controversy was a part. This deed reserved a vendor's lien to secure four notes, of $291.70 each, executed by Pompey Higgins for purchase money due on the land. Pompey Higgins had a wife at the time of this purchase, and they bought the property for a homestead, and thereafter made their home on it. In 1884, after the death of his wife, Maria Higgins, Pompey Higgins sold 40 acres of this land to Ed Bess; the remaining 91 acres of the 131-acre tract being the land involved in this suit.

Four of the children of Pompey and Maria Higgins survived their mother. These children were Joe and Jacob Higgins and Hannah and Eliza Ward, all of whom continued to reside on the land with their father after the death of their mother.

On June 7, 1893, Pompey executed a deed to H. Masterson for the 91 acres of land, which recites that the grantor owed Masterson a balance of $310 on the purchase-money notes given by him for the land, and, being unable to pay this balance, the land is conveyed in satisfaction of the debt.

On November 1, 1894, H. Masterson reconveyed the land to Pompey Higgins, retaining a vendor's lien to secure four notes of $90 each, given for the purchase money of the land. On June 5, 1897, in a suit in the district court of Brazoria county, H. Masterson recovered a judgment against Pompey Higgins for $594.75, with foreclosure of a vendor's lien upon the land.

On April 5, 1897, Pompey Higgins and his then wife, Emily Higgins, and Joe Higgins, Jacob Higgins, Hannah Ward, and Eliza Ward, children by his first wife, employed W. S. Sproles, an attorney of Brazoria county, to set aside the judgment in favor of H. Masterson, foreclosing a vendor's lien on the land, and to recover the land for them. Under this contract of employment, Sproles received a deed from the Higginses for an undivided one-half of the land. In pursuance of his contract of employment, Sproles instituted two suits against Masterson in the district court of Brazoria county. The first, which was a suit to set aside the judgment foreclosing the vendor's lien on the land, was styled Pompey Higgins et al. v. H. Masterson. The second suit was styled Emily Higgins et al. v. H. Masterson, and was a suit to remove cloud from the title to the land.

By agreement of the parties these cases were consolidated and tried as one. A judgment was rendered in the consolidated case on July 10, 1897, setting aside the former judgment foreclosing the vendor's lien on the land for $594.75, and giving judgment in favor of Masterson against Pompey Higgins for $500, with foreclosure of a vendor's lien on the land against all the plaintiffs in the suit. The land was sold under this judgment and conveyed by the sheriff to H. Masterson on September 7, 1897.

Thereafter, on October 1, 1897, H. Masterson conveyed the land to Pompey Higgins, retaining a vendor's lien to secure five notes, for $100 each. This deed is not of record, and was not produced on the trial, but in a subsequent suit by Masterson against Pompey Higgins to foreclose a vendor's lien on the land for the five $100 notes executed by Pompey Higgins the judgment recites the execution of the deed and foreclosing of the vendor's lien therein retained. This judgment of foreclosure was rendered on February 7, 1905. An order of sale was issued on this judgment, and the land sold thereunder to H. Masterson, and conveyed to him by the sheriff on March 28, 1905.

The land was conveyed to the South Texas Development Company by H. Masterson on September 18, 1905, and that company brought this suit on February 1, 1910. Prior to the filing of its petition herein the appellee mortgage company acquired the title of the original plaintiff development company.

■ We agree with the learned trial judge that, upon the undisputed facts before set out, defendants could not have acquired title by limitation against Masterson. The joint possession of the land by Pompey Higgins and his children could not be held adverse to the superior title of the holder of the notes and the vendor's lien reserved in the deed under which Pompey Higgins held possession.

In the situation shown by these facts no agreed partition of the land between Pompey Higgins and his children could make the pos-

session of any part by one or more of the children adverse to Masterson. By the judgment in the consolidated case before mentioned, to which all of the defendants in this suit, or those ·under whom they claim, were parties, Masterson's lien was established, and foreclosed against all of the parties, and the land was thereafter sold and conveyed to Masterson under this judgment, and presently reconveyed by him to Pompey Higgins in consideration of five notes, for $100 each, secured by a vendor's lien upon the land, reserved in the deed. There was no change in the character of the possession of Pompey Higgins and his children, the defendants herein, after the judgment, or after the reconveyance to Pompey by Masterson. That such continued possession of the land, without actual notice to Masterson of defendants' claim of ownership, could not ripen into title by adverse possession, is, we think, well settled. Ater v. Knight (Tex. Civ. App.) 218 S. W. 648; Hardy v. Wright (Tex. Civ. App.) 168 S. W. 462; Burnett v. Atterberry, 105 Tex. 119, 145 S. W. 582; Id. (Tex. Civ. App.) 130 S. W. 1028; Pearson v. Boyd, 62 Tex. 544; Thompson v. Dutton (Tex. Civ. App.) 69 S. W. 641; Runge v. Gilbough (Tex. Civ. App.) 87 S. W. 832, 833. After the subsequent foreclosure and sale to Masterson in 1905, no sufficient time elapsed to mature title by adverse possession prior to the institution of this suit in 1910.

■ The claim of defendants that the land was paid for prior to the death of their mother, Maria Higgins, and that H. Masterson held no lien upon their mother's one-half interest, cannot be entertained, because defendants are precluded by the judgment against them before mentioned, foreclosing Masterson's lien, from now claiming that such lien was discharged in the lifetime of their mother.

■ There is no merit in appellants' contention that appellee was not entitled to recover the land, because the record shows an outstanding title in W. S. Sproles to a one-half interest therein. Such outstanding title in Sproles could at most only prevent appellee's recovery of the entire tract, but the record does not show an outstanding title in Sproles. At the time the land was conveyed to Sproles by appellants, Masterson had a judgment establishing and foreclosing his vendor's lien against the land, and the consideration for the deed to Sproles was his undertaking to set aside this judgment and recover the land for appellants. In the suit brought by him for this purpose, by an agreed judgment Masterson's, lien was again established and foreclosed. Masterson's vendor's lien and superior title being thus shown to have existed and been known to Sproles at the time the deed to him was executed, and his position being that of a subsequent vendee, he was not a necessary party to the second foreclosure suit; his only right being that of redemption.

Sproles having acquired his title with full notice of Masterson's superior right in the land, and having undertaken in pursuance of the contract under which he obtained title to relieve the land from this lien, and a judgment by agreement having been rendered in the suit brought by him to defeat the lien, establishing and foreclosing the lien, he is estopped by that judgment from asserting a title superior to the lien held by Masterson. Johnson v. Bingham (Tex. Civ. App.) 251 S. W. 529.

■ The evidence was amply sufficient to show the issuance of the order of sale on the judgment in favor of Masterson in the suit brought by Sproles, foreclosing Masterson's lien, and the sale thereunder to Masterson. The record shows the rendition of an agreed judgment in the consolidated cases brought by Sproles, foreclosing Masterson's ·lien against all the parties to the suit, and directing the clerk to issue an order of sale thereon, commanding the seizure and sale of the 91 acres of land in controversy.

Among other items charged in the fee book is the following: "August 6, 1897, order of sale and return, $1.50." The sheriff's deed, which was executed on August 7, 1897, recites the issuance and levy under the order of sale, and the sale of the land thereunder to Masterson. A. E. Vorderman, clerk of the court, testified:

"My name is A. E. Vorderman. I am clerk of the district court of Brazoria county, Texas. I am custodian of the records and papers in the clerk's office. I have made a search in my office for the original papers in causes Nos. 6608 and 6609. I have not been able to find them. I have made a search of the execution docket of Brazoria county, to see if I could locate the entry in the execution docket of the execution that was issued. The order of sale that was issued in causes Nos. 6608 and 6609 I did not find. This [indicating] is the execution docket of Brazoria county that was used in 1897. That is a civil fee book of the district court; it shows a cause on there as No. 6608. This record shows that on August 6, 1897, the clerk assessed a fee of $1.50 against the plaintiffs, or as court costs, for an order of sale and return in cause No. 6608. That is in civil fee book of the district court. It hasn't got any other name that I know of, but it is a book in which the clerk records the fees assessed in all the different cases, on page 188 of said book."

See Ludtke v. Bankers' Trust Co. (Tex. Civ. App.) 251 S. W. 600; Bendy v. Carter (Tex. Com. App.) 269 S. W. 1037.

■ The trial court did not err in refusing appellants' motion to dismiss appellees' suit on the ground that the suit had been abandoned. The evidence introduced on the hearing of ·the motion, a large portion of which consisted of entries on the court's docket and in the minutes of the court, conclusively shows that there was no intention on the part

of the plaintiff to abandon its suit. The case was continued from term to term, in many instances by agreement. No motion was filed by any of the defendants to dismiss the suit for want of prosecution prior to the motion filed on the trial.

The defendant, Joe Higgins, testified: "The reason that Mr. Munson did not dispose of my case was that I hadn't paid him all of my fee before he died. Yes, sir; that was the reason why Mr. Munson did not go on and try the case. Mr. Munson didn't tell me, as soon as I paid him all of his fee, he would go on and try my case. I just think that the reason he didn't go ahead and dispose of the case was that I hadn't paid him all of his fee. Crops were failing, and we were behind, and we just didn't get to pay him all of his fee."

Plaintiff's attorney was shown to have been present on the call of the docket at every term of the court after the suit was filed. Roemer v. Shackelford (Tex. Civ. App.) 23 S. W. 87.

■ The appellee mortgage company, having, subsequent to the filing of the suit, acquired all of the original plaintiff development company's title and interest in the land, had the right to prosecute the suit in its name, or in that of the development company, and the petition filed by the mortgage company, whether properly designated an amended petition or not, was in fact a continuation of the original suit by one having all the rights of the original plaintiff. The rights of none of the parties were affected by the mortgage company designating its petition an amended petition, nor by the petition having been filed in vacation. Gabb v. Boston, 109 Tex. 26, 193 S. W. 137; Heard v. Vineyard (Tex. Com. App.) 212 S. W. 489, 492.

We have duly considered all of the propositions presented in appellants' brief, and none of them can, in our opinion, be sustained. What we have said disposes of all the material questions presented by the record. The judgment is affirmed.

Affirmed.

GRAVES, J. (dissenting). The peremptory instruction given in this cause must be justified, if at all, upon a determination that it conclusively appeared:

(1) That this 91 acres had not been paid for prior to the death of Maria Higgins, and that Pompey Higgins actually owed H. Masterson an unpaid $310 balance on the original B. T. Masterson purchase-money notes therefor on June 7, 1893, when he executed to him the deed thereto so reciting.

(2) That Pompey Higgins did not, on or about 1890, parcel out to his children by Maria, the appellants here, this entire tract, except a small piece he reserved for himself in its southeast corner, which several segregated parts they then respectively took, and continuously until this trial so maintained

individual possession of, claiming the same adversely to any right of Pompey Higgins therein.

(3) That the agreed judgment of July 10, 1897, in Pompey Higgins et al. v. H. Masterson and Emily Higgins et al. v. H. Masterson, Nos. 6608, 6609, consolidated, was not settled and satisfied by Pompey Higgins' executing for himself only to H. Masterson, on October 1, 1897, five notes, for $100 each, called vendor's lien notes.

Believing that the evidence heard, together with the admissible testimony tendered, clearly raised an issue for the jury as to each of these features, I dissent from the judgment that affirms a contrary holding.

Appellee mortgage company's claim of title is dependent upon the deed from Pompey Higgins to H. Masterson of June 7, 1893, and upon its recitation that Pompey then owed Masterson $310, "balance on purchase-money notes paid by him for the land," whereas appellants presented direct testimony, particularly from Joseph Higgins, who spoke as having personal knowledge, to the effect, first, not only that this entire indebtedness had been fully paid before the death, about three years before that, of his mother, Maria Higgins, but that it had been so judicially declared, and the lien securing it specifically canceled, by the district court of Brazoria county in the cause of J. V. Hinkle (to whom H. Masterson had transferred the note) v. Pompey Higgins et al., No. 4310, this judgment itself being in evidence, and so showing; second, that this 91 acres had been the homestead of their father and mother, Pompey and Maria Higgins, since their purchase of it from B. T. Masterson in 1881 up to Maria's death, about 1890, and that shortly thereafter, and prior both to Pompey's second marriage and to the date of this deed to Masterson, there being then no debt outstanding against it, Pompey had by agreement with them partitioned it out in severalty among his children, retaining for himself a small piece in the southeast corner; third, that, immediately on being thus allotted their several segregated shares of the tract, these children had taken possession thereof, which they continuously for nearly 40 years thereafter maintained, under the exercise of all the rights of ownership thereof against the world, their father included, and up until the trial of this cause; Joseph Higgins even testifying that he thus brought the character of his claim and possession directly home to H. Masterson during the latter's lifetime:

"I know that Mr. Harry Masterson knew of my claim to this land. I met him right here, and asked him concerning the land and the debt he had against papa; and he said, 'I don't want your land.' I told him then of my claim to this land."

Just how it can be held that this testimony did not raise an issue of title by limitation

under the 10-year statute to at least an undivided one-half interest in the 91 acres in the heirs of Maria Higgins, even were the claimed partition of it between their father and them conceded to be ineffective for any reason (which is not here done), when this suit to recover it from them was not filed until 1910, does not readily occur; if the purchase money against it was thus paid before their mother's death, about 1890, they inherited her one-half of the land free from any claim the appellee mortgage company held under, and the deed from Pompey Higgins to its predecessor in June of 1893 could at most have conveyed his interest only, if, indeed, any at all; so there would in that event have been no superior title, notes, nor vendor's lien against that half by virtue of "the deed under which Pompey Higgins held possession," as the majority opinion puts it, and the rule there applied would have no application, even if the possession of the whole tract had been "the joint possession of the land by Pompey Higgins and his children," as that opinion further recites. That there was any such joint possession seems to me, however, an assumption directly in the face of the positive testimony of appellants to the contrary, as hereinbefore shown, hence made in violation of the rule that, on an appeal from the giving of a peremptory instruction, the evidence is to be considered most favorably to the party against whom the instruction is operative, disregarding all conflicts and contradictions however strong. Ladies Benev. Soc. of Beaumont v. Magnolia Cemetery Co. (Tex. Civ. App.) 268 S. W. 198; Harpold v. Moss, 101 Tex. 540, 109 S. W. 928.

Such having been the inception of appellants' claim of title, and so regarding the evidence, no break appears in the previously recited continuity of their possession under it, unless the judgment of July 10, 1897, in consolidated causes Nos. 6608, 6609, should be held to constitute one, which may not properly be done, it seems to me, for this reason: This was an agreed judgment, the recovery for money being against Pompey Higgins alone, with a foreclosure of lien only as against appellants, and they offered direct testimony to the effect that it had by agreement been fully paid and satisfied on October 1, 1897, by H. Masterson's having accepted in consideration thereof five notes, of $100 each, from Pompey Higgins, only after they themselves, though importuned to do so by the attorney who had appeared for them in agreeing to such judgment, had refused to sign them on the ground that Masterson held no debt, either against them or their interest in the land. The appellee mortgage company had introduced this judgment in support of its claim of title, and, when appellants in reply offered the stated testimony, the learned trial court excluded it on the mere objection that it was a collateral attack on that judgment of July 10, 1897.

That this was an inadvertence seems to me not debatable, since the proffered proof had for its objective, not any attack upon the integrity of the judgment, but merely to show its subsequent payment, with consequent release of the lien carried, which could be done by parol. Abee v. Ass'n (Tex. Civ. App.) 78 S. W. 973; Burnett v. Atterberry, Administrator, 105 Tex. 119, 145 S. W. 582, 584; Id. (Tex. Civ. App.) 130 S. W. 1028; Porter v. Metcalf et al., 84 Tex. 468, 19 S. W. 696.

In the Burnett Case our Supreme Court thus stated the applicable principle: "It is not important to determine whether or not a vendor's lien may be released by verbal agreement; but, if that question is presented by the facts of the case, we agree with the Court of Civil Appeals that such lien may be released by verbal agreement. * * * Without the existence of the debt for the purchase money, the retained estate has no foundation for its existence. The moment the debt is paid, the lien is satisfied, and the retained title or estate is released ipso facto."

The relevancy of this excluded testimony to appellants' case is equally plain. The court's refusal to give the duly requested issues, hereinbefore enumerated, and, instead, peremptorily instructing a verdict against appellants, constituted reversible error, in my opinion, for which the cause should have been remanded for another trial.

I do not desire to be committed to the other holdings of the majority opinion, which lack of time has prevented the discussion of, but do agree that no error was involved in the refusal below of appellants' motion to dismiss the appellees' suit on the claim of its abandonment.