David **FRIEDMAN** et al., Appellants,

v.

Robert **OLSON**, Appellee.

No. 5264.

Court of Civil Appeals of Texas,
Eastland.

Sept. 13, 1979.

Rehearing Denied Oct. 4, 1979.

Toby L. Gerber, Berman, Fichtner &
Mitchell, Dallas, for appellants.

Ernest E. Figari, Jr., Hewett, Johnson,
Swanson & Barbee, Dallas, for appellee.

Fred M. Kuehne, III pro se.

DICKENSON, Justice.

David Friedman and Martin Shaffer
sought an accounting and other relief from
Robert Olson in connection with a real es-
tate joint venture. Based upon the jury's
verdict that Friedman and Shaffer had
abandoned the joint venture, were estopped
from claiming an interest in the joint ven-
ture, and were in default under the terms
of the joint venture agreement, judgment
was rendered that they take nothing from
Olson. They appeal. We affirm.

Robert Olson has perfected a cross-appeal
from the trial court's action in sustaining

Friedman and Shaffer's exceptions to his counterclaim for fraudulent concealment of material facts and in excluding evidence offered in support of the counterclaim. We reverse the trial court's judgment insofar as it denied the counterclaim for fraud, severing and remanding that cause of action.

## BACKGROUND

Friedman, Shaffer, Olson and one other joint venturer, Fred M. Kuehne, III, signed the "Agreement of Chateau Joint Venture" which is dated February 4, 1974, concerning the Chateau Apartments which they purchased in the name of Fred M. Kuehne, III, Trustee. The agreement provided that Olson and Shaffer would each make an initial contribution of $20,000 and that the other two venturers would not be required to make any initial contributions. Subsequent contributions were to be made by the four venturers on the basis of 25% each for the payment of all costs and expenses in the operation and maintenance of the venture property. Failure of a joint venturer to make his contribution was an "event of default" which gave the nondefaulting venturers the right to acquire his interest at "the lower of" fair market value or the total cash investment of the defaulting venturer, as of the date of default.

The apartment house was in a "distress situation" when it was acquired by the four joint venturers. It continued to lose money in 1974 and 1975, requiring additional contributions of capital. Effective July 18, 1975, Kuehne resigned from the venture. Olson became the "de facto" manager of the venture, keeping the books and paying the bills. The jury found that Friedman and Shaffer were estopped to make any objection to Olson's assumption of the position of manager. The jury also found that Shaffer defaulted on his obligations under the agreement on June 20, 1975, and that Friedman defaulted on September 24, 1975. At that time, the venture was losing money, and Olson made all of the capital contributions which were required. There was evidence the liabilities exceeded the value of the assets. On September 29, 1975, Fried-

man and Shaffer told Olson they were not going to "pour anymore money into this rathole." Shaffer wrote a letter to Olson confirming that conversation and stating that he would "give up to you any interest I have in Chateau Apartments." The apartments began to make money after Olson completed the renovation in 1976, and then Friedman and Shaffer asserted a claim to the apartments, seeking an accounting and other relief.

After the joint venture agreement was executed, Olson learned that Friedman and Shaffer had made a side agreement that they would split the $20,000 original contribution which Shaffer was obligated to make. Olson also learned that Friedman and Shaffer had been convicted in federal court of making false statements to a governmental agency in connection with previous real estate activities; that they had been convicted of making false oaths in connection with bankruptcy proceedings; that both had served penitentiary sentences in connection with those convictions; and that both of them had previously taken bankruptcy. He learned that they were not "successful and capable real estate operators with a prior successful business history," which they had represented to him in connection with getting him to enter the joint venture agreement with them.

## APPEAL BY FRIEDMAN AND SHAFFER

Friedman and Shaffer have briefed seven points of error. The first point argues that the trial court erred in overruling their motion for judgment and in failing to enforce the venture agreement's provisions for dissolution. We disagree. The jury's finding that they are estopped to claim any interest in the Chateau Joint Venture bars their recovery. The second point argues that the trial court erred in refusing to submit their requested special issues. We disagree. Those issues become immaterial in view of the jury's finding that they are estopped to claim any interest in the venture. Moreover, their requested issues were not controlling issues

within the meaning of Tex.R.Civ.P. 279. The third point contends the trial court erred in divesting their ownership rights in the real estate owned by the venture because they could not abandon or be estopped to claim their interest in the real estate. We need not discuss the question of "abandonment" of their undivided interest in the equitable title to the apartment house complex in view of the jury's finding of estoppel. A party can be estopped to claim an interest in real estate. See *"Moore" Burger, Inc. v. Phillips Petroleum Company*, 492 S.W.2d 934, at 937 (Tex. 1972); *Burnett v. Atteberry*, 105 Tex. 119, 145 S.W. 582, at 587 (1912); *Farmer v. Thompson*, 289 S.W.2d 351, at 356 (Tex.Civ. App.—Fort Worth 1956, writ ref'd n. r. e.); 4 Tiffany, Real Property § 1235 (3d ed. 1939); 22 Tex.Jur.2d, Estoppel § 4 (1961).

The fourth point argues that the trial court erred in its submission of the issue on abandonment. This was an independent ground of recovery which we need not discuss in view of the jury's finding of estoppel.

The fifth point contends the trial court erred in its submission of the issues on estoppel. We disagree. The trial court defined estoppel as follows:

"Estoppel" means the effect of the voluntary conduct of any person whereby said person is precluded from asserting rights against another person who relies on said conduct; and it arises where any person, by his acts, statements, admissions, or silence when it is his duty to speak, intentionally or through culpable negligence, induces another to believe that certain facts exist, and the other person rightfully relies and acts on said belief, and who will be prejudiced if the former is permitted to deny the existence of said facts.

Following that definition, the jury was asked to find whether Friedman and Shaffer were estopped to claim any interest in the Chateau Joint Venture. They argue that each element of estoppel should be submitted in a separate issue. We disagree. Tex.R.Civ.P. 277 now permits a combination of elements or issues.

The other points of error presented by Friedman and Shaffer have been considered, and they are overruled.

### CROSS–APPEAL BY OLSON

Robert Olson contends that the trial court erred in sustaining the exceptions to his counterclaim against Friedman and Shaffer. We agree. We must accept as true all of the allegations contained in that counterclaim for the purpose of testing its sufficiency. *Connally v. Continental Southland Savings & Loan Ass'n*, 121 Tex. 565, 51 S.W.2d 293 (Com.App.1932, opinion adopted); *Farias v. Besteiro*, 453 S.W.2d 314 (Tex.Civ.App.—Corpus Christi 1970, writ ref'd n. r. e.). Concerning fraudulent misrepresentation, see *Oilwell Division, United States Steel Corporation v. Fryer*, 493 S.W.2d 487, at 491 (Tex.1973) and Tex. Bus. & Com.Code Ann. § 27.01 (1968).

That portion of the judgment which denied Robert Olson's counterclaim for fraud is reversed, and that counterclaim is severed and remanded. The remainder of the judgment is affirmed.