### J. N. PORTER v. H. Z. METCALF ET AL.

#### No. 7534.

1.   **Consideration for Release of Lien.**—A payment before maturity on a part of several vendor lien notes is a consideration sufficient to support a contract to release the lien for the balance unpaid.

2.   **Novation.**—Suit for land or in alternative to foreclose vendor's lien notes upon it.   The defendant answered, that subsequent to the making of the notes and before two of them were due the parties had made a new contract, by which upon defendant's delivering 100 head of cattle and paying $500 in money (the principal of the four notes), the lien was to be released and the plaintiffs to take the unsecured verbal promise of the vendees for the interest unpaid.   The facts in evidence were sufficient to sustain a verdict that such new contract had been made, and that its terms had been complied with by the defendants.   *Held,* that a charge submitting the agreement and performance as a defense was properly given by the court.

3.   **Evidence—Release.**—A release signed and acknowledged releasing the notes and lien declared on by the plaintiff when offered in evidence was objected to on the ground that it had not been delivered.   The testimony being *conflicting as to its de-* livery or nondelivery, the court did not err in permitting it to be read to the jury; the jury being instructed as to effect, whether delivered or not.

4.   **Executed Contract.**—The contract for release of the lien upon agreed payment, upon such payments being made would operate as a release of the lien.   Such being the law, the execution or the delivery of a written release became immaterial.

5.   **Self-Serving Declarations.**—The plaintiff who had signed and acknowledged a release of the lien he was seeking to enforce proposed proving, in order to avoid the effect thereof and to show that it had not been delivered, that in absence of the defendants he had caused the notary to note upon his record certain material conditions to its delivery.   These declarations were self-serving, and were properly excluded.

6.   **Immaterial Error.**—Where the jury found for the defense upon an answer defeating the notes and lien alleged by plaintiff as his cause of action, it became immaterial that a charge was refused directing the jury as to the mode of ascertaining how the amount due the plaintiff should be ascertained in event they found for him.

7.   **Charge—Properly Refused.**—The plaintiff requested a charge that recitals of payment, etc., in a release in evidence were not conclusive.   The only question

made on the trial touching the release was whether it had been delivered. *Held*, such charge was properly refused.

8. **Practice.**—Plaintiff's cause of action was upon vendor's lien notes described. Defendants alleged a discharge of the notes and lien by a new executed contract. The plaintiffs denied the existence of any agreement consummated whereby the original cause of action would be avoided. Such being the issues, it was proper for the court to limit the right to recovery by plaintiff to the notes and original lien. It was proper to refuse a charge allowing a recovery upon the new contract repudiated by him.

ERROR from Bosque. Tried below before Hon. J. M. HALL. No statement is necessary.

*L. C. Alexander*, for plaintiff in error.—1. The court erred in overruling plaintiff's motion for a new trial on the ground that the verdict of the jury was contrary to the evidence. The evidence of J. N. Porter and of Locket and the papers and surrounding circumstances show that the new agreement between Porter and the defendants was, that Porter would discharge the notes and release his original vendor's lien upon the condition that defendants would execute an obligation for the balance above $2000 and a second mortgage to secure same. The evidence of John Metcalf and William Metcalf shows that they and each of them (acting for all defendants) admitted a balance due Porter and agreed to pay it, and that it is unpaid. The evidence further shows, that the release executed by Porter was never delivered to defendants, Porter having left the same, as shown by the unopposed testimony of Locket and Porter and of White, to be delivered and operative only when the Metcalfs had executed the obligation and mortgage for the balance; and it appearing that the same was placed on record without a compliance with the conditions and without the knowledge or consent of Porter, and without the knowledge and consent of Locket.

2. The court erred in admitting the purported release and receipt of J. N. Porter to defendants, because the same was in possession of Porter, its delivery was disputed by the pleadings of plaintiff, and no evidence of its delivery was adduced.

3. The evidence failing to show any intention to deliver a release of the lien except on conditions not performed, it was competent to show what transpired between the notary who took the acknowledgment and Porter, the maker at the time of the acknowledgment, it being a part of the res gestæ, and as evidence of the care Porter exercised, precluding an estoppel against him which might arise from negligence of others, by which the instrument was placed on record. Steffian v. Bank, 69 Texas, 518.

4. It was the duty of the court to instruct the jury as to the legal effect of the deeds and notes; and the court erred in its own charge in submitting whether there was anything due and unpaid, and in refusing the charges requested by plaintiff directing the method of ascer-

taining the balance due.   Hough v. Hill, 47 Texas, 153; Norwood v.
Boon, 21 Texas, 592; Cowan v. Williams, 49 Texas, 394; San Antonio
v. Lewis, 9 Texas, 71.

5.   The court erred in refusing a charge that the recitals of the pay-
ment of the notes and interest in said release were not conclusive as to
such fact, and that it was competent for plaintiff to show by evidence
that said debt was not paid, there being evidence (that of Porter) that
said debt was not by the contract released, corroborated by the evidence
of John Metcalf and William Metcalf.

6.   It was error for the court to submit the question of delivery of
the release in the absence of evidence, and to instruct them that if de-
livered they would find that the notes had been paid off, the evidence
showing that they had not; and there was also error in telling the jury
that the payment of the money and the cattle was a delivery of the
release.

*Helton & Hughes, S. H. Lumpkin,* and *Knight, Crain & Ramsey,* for
defendants in error.—The law governing accord and satisfaction is the
substitution of a new agreement between the parties in satisfaction of
the old one; and in this case, where the satisfaction of the new agree-
ment appears to have been performed in accordance with said new
agreement by the actual delivery of the 100 head of cattle and the pay-
ment of the $500, and the verbal promise to pay at some future day
the unsecured supposed balance of the old debt, and a release of all
liens as originally held on said old agreement which had not matured.
Such new promise and actual payment in conformity to the accord of
the parties when accepted by them in lieu of the old agreement is a
complete bar to the right of action on such old agreement; and where
suit is brought thereon and not upon the new agreement a verdict of
the jury and judgment of the court for the defendants on their plea of
accord and satisfaction should not be set aside, though other errors may
have been committed by the court in its charge to the jury on other
branches of the case, or by its rejection or admission of evidence on
other and different phases of the case.  Lanes v. Squyres, 45 Texas, 322;
Bradshaw v. Davis, 12 Texas, 336; Overton v. Conner, 50 Texas, 113.

STAYTON, CHIEF JUSTICE.—This action was brought by appellant
and another, as partners, to recover the land described in their petition,
or in the alternative to recover the balance of the purchase money
claimed to be due on notes, and to enforce its payment by foreclosure
of lien upon the land.   One of the partners having died pending the
action, it was prosecuted to final judgment by appellant.

On October 15, 1883, appellees bought the land in controversy from
the firm of which appellant was a partner, on a credit; and to secure
the payment of the purchase money executed four promissory notes,

each for $500, falling due January 1, 1885, January 1, 1886, January 1, 1887, and January 1, 1888, respectively. These notes bore interest from date. In the face of the deed by which the land was conveyed the vendor's lien was retained, and a mortgage with power of sale was also executed to secure the indebtedness.

Under the instrument last referred to the land was sold on April 17, 1886, by the trustee, and the plaintiffs became the purchasers and received a deed.

The substance of the defense alleged is thus stated with substantial accuracy in the brief for appellees: "On or about the —— day of October, 1885, the plaintiffs and defendants entered into a new, distinct, and substituted agreement in regard to said notes and sale of said land, to-wit, that the defendants should deliver immediately to the plaintiffs 100 head of cattle, for which the plaintiffs were to give them credit at the rate of $15 per head and $500 in cash (in money), which was to be borrowed from a loan company by defendants on said land, and that plaintiffs were to give up all of said notes and execute to defendants a release of said notes and lien, and to take a new and unsecured personal promise for the interest on said notes at that time in October, 1885; that in pursuance to said new contract and agreement defendants did immediately afterward deliver to plaintiffs, on November 15, 1885, 100 head of cattle at $15 per head, making $1500, and that afterward, on January 1, 1886, did pay to plaintiffs the sum of $500 in cash. Plaintiffs did receive the cattle and money, and on November 1, 1885, did execute to the defendants a release of said notes and lien, which was duly acknowledged and recorded on January 21, 1886; that afterward, in April, 1886, and when all of the notes had been paid to the extent of $2000, and even before two of the notes fell due, plaintiff caused the land to be sold under a deed of trust, the lien in which had been released by written release as aforesaid. Defendants among other things pleaded accord and satisfaction."

Plaintiffs denied these facts, but conceded that they did agree to receive the cattle and sum alleged, and thereupon did credit defendants' indebtedness with the sum of $2000, and upon the delivery of the cattle and payment of the sum named and the execution of a mortgage upon the land to secure the unpaid purchase money, did further agree to release their prior lien, in order that defendants might borrow money by mortgaging the land; but they alleged, that the mortgage which was to operate as a second mortgage was never executed, and that for non-compliance with the agreement the original indebtedness and lien were never released.

It will thus be seen, that plaintiffs based their right to recover the land on the conveyance made by the trustee, and their right to recover money on the original notes, and that they did not rely upon the unsecured personal promises of defendants.

The evidence as to what the agreement was, was conflicting; that for plaintiffs tending to sustain their view of the facts, while that for defendants tended to show that there was an agreement that in consideration of the payment of the sum of $500 and the delivery of 100 head of cattle the notes and lien on the land should be surrendered, and plaintiffs look alone to the unsecured verbal promise of defendants to pay the balance.

Such a contract, if made and complied with by defendants, would deprive plaintiffs of lien on the land or right to maintain an action on the notes; for it was in no respect unlawful, and was supported by sufficient consideration, proved in the fact of payment of a part of the indebtedness before it was due, and in other parts of the transaction.

The first assignment of error questions the ruling of the court in overruling a motion for new trial, based on the ground that the verdict of the jury was contrary to the evidence; but we may say, that the evidence offered for defendants was sufficient to sustain the verdict, if believed, and whether it was entitled to credence was a question for the jury.

The court, by a charge not complained of, instructed the jury, if they found that such an agreement was made as alleged by defendants, they would find in their favor, if they further find that defendants complied with that agreement; and their finding under this charge is conclusive of the rights of the parties, if there was no error committed by the court in giving other charges, refusing charges requested by plaintiffs, or in the admission or rejection of testimony.

During the trial defendants offered in evidence an instrument, as follows:

"*State of Texas, County of Bosque.*—Whereas, on the 18th day of October, 1883, H. Z. Metcalf and J. N. Metcalf did execute four promissory notes, dated October 15, 1883, and due January 1, 1885, 1886, 1887, and 1888, payable to R. S. Porter & Son, for a total sum of $2000, and interest from date, the payment whereof secured by vendor's lien on 160 acres of land out of the S. Pangborn survey of 320 acres, on head of Childress Creek, in Bosque County, Texas; and whereas said notes with accrued interest thereon have been fully paid: Now, therefore, know all men by these presents, that I, J. N. Porter, being the legal owner and holder of said notes, do hereby declare said notes are fully paid and cancelled, and the mortgage on said property created by said trust deed is hereby declared fully released and satisfied. In witness whereof, I do hereto subscribe my name, at Meridian, this 21st day of November, 1885.          "J. N. PORTER."

It was acknowledged before a notary on same day, and was filed for record on January 21, 1886. On the instrument was the following indorsement:   "Deposited with O. L. Locket, by agreement."

The objection made to the introduction of the paper was, that there was no evidence that it had ever been delivered. The indorsement on the release, it is conceded, was made under the direction of appellant, and it evidences the fact that this was under an agreement. The instrument was in possession of Locket, and all parties concede that it was expected to be placed on record that defendants might be able to borrow money on the land with which to make the contemplated payment to plaintiffs of $500, and to meet other demands against them. Appellant concedes, that the negotiations between the parties began with the following letter, which he introduced in evidence:

*"J. N. Porter:*                               "MERIDIAN, TEXAS, Nov. 12, 1885.

"I can not stand off the Mrs. Harbrough debt, and I thought I would make another proposition to you. I can get $1000 on the land by taking in the notes you hold. So, if you will give up notes, I will still let you have my cattle, also pay you $500 in money, which would leave me $500 to pay Mrs. Harbrough and other debts. The balance due you on the place, you will have to take my note and risk me paying it. I would not mind giving security, but of course I could not, as everything I have would be mortgaged. I hope you will make this trade with me, as it is now the only way I see to satisfy any of my debts. You could only lose the interest if I should fail to come up with the last payment. If you make this agreement telegraph me at once, and I will have cattle gathered; also send notes to bank at Meridian. Let's fix up at once. I guess you think me cheeky. This is my last chance, and I think it will be all well some day. Respectfully,

[Signed]   "JNO. N. METCALF."

When defendants desired to borrow money, as contemplated, they went to Locket, who referred them to Dillard, who was in his office, for an arrangement of the matter, and Dillard took the release and had it recorded, and thereupon the money was borrowed, and of that plaintiff received the $500 defendants had agreed to pay.

The evidence of the parties as to the terms on which the release was to be delivered was as conflicting as was it as to the real agreement between them, but that of one of the defendants who negotiated the agreement was, that plaintiff executed the release "and left it with Locket, telling witness that when he paid Locket $500 he could get the release." Under such a conflict of evidence, the court properly permitted the release to be read in evidence; for if such was the agreement, defendants were entitled to the release on payment of the sum contemplated, and its delivery was legal, it matters not what directions plaintiff may have privately given to the person in whose custody it was placed. The court properly instructed the jury to determine whether the release was delivered in accordance with the agreement

of the parties, and as to the effect that might be given to it in the event it was found that the paper had or had not been so delivered.

Plaintiff proposed to prove, that at the time he acknowledged the release before a notary he caused that officer to note on his record that the instrument was not to be delivered until defendants should execute a second mortgage on the land to secure the balance after the payment of the $500 and delivery of the cattle; but this did not occur in the presence of either of the defendants, and on objection the court excluded the testimony, as well as what plaintiff proposed to prove that he said to the notary at the time. In this ruling there was no error, for the plaintiff could not thus make testimony for himself, in the absence of defendants.

It is urged that the court erred in refusing to give the following instruction:

"If you find for plaintiff, you will find for him the amount of the notes described in plaintiff's petition and 10 per cent interest to the dates of the payments, including money and cattle, and will then deduct the amount paid, deducting for the cattle and the amount you may find for them under the general charge, and then find for plaintiff the balance, with interest thereon at 8 per cent on such amount from the date of said payments to this date; and if you find that the defendants or the one making the contract agreed to give a second mortgage to secure said balance, you will so state, and find that said mortgage be foreclosed."

The court had correctly instructed the jury under what facts they could find for plaintiff and what they might find in his favor; and as the finding on the main issue was against him, the refusal to give the charge requested would not justify a reversal of the judgment, even if the charge had been abstractly correct.

It is further urged that the court erred in refusing to give the following charge: "The jury are further instructed as to the release in evidence, that the recitals therein are not conclusive of the fact that said debt was discharged, but it is competent for the plaintiff to show by the evidence that said debt and interest was not discharged, notwithstanding said recitals; and if the jury believe from the evidence that the agreement of Porter and Metcalf was not to discharge the debt, principal and interest, as therein recited, they will find for plaintiff the balance of said debt after deducting payments, notwithstanding the said recitals."

There was no evidence tending to show that the release was signed under circumstances that deny to it full force and effect, and the only controversy was whether it had been delivered; and under this state of facts the court would not have been justified in charging, that it did not operate a relinquishment of the lien and satisfaction of all claim

based on the notes, if the agreement was as claimed by defendants and fully complied with.

The charge was, however, calculated to mislead the jury. Plaintiff based his entire right to recover on the notes and original lien, and expressly denied that there was any agreement consummated whereby his cause of action would rest solely upon the unsecured promise of defendants for the balance unpaid by the delivery of the cattle and the $500. That the latter was the contract was expressly alleged by defendants. A plaintiff must recover on the case made by his petition or not at all; and under the finding of the jury it must be held, that the notes given for the land ceased to be binding obligations by reason of the agreement subsequently made between the parties and a compliance therewith by defendants, and that all lien to secure any unpaid balance was surrendered. The charge refused would have led the jury to understand that plaintiff would be entitled in this action to recover any part of the original indebtedness that had not been paid, even if the facts were as alleged by defendants and denied by plaintiff. Defendants did not deny their indebtedness to the plaintiff for an unpaid balance, but they did deny that they were liable for this on any cause of action asserted by plaintiff.

The agreement pleaded by defendants and compliance therewith operated as a payment of $2000 of the original debt and as a novation of the balance whereby the notes ceased to constitute a cause of action and the lien ceased to exist. The right of the parties under the new contract, which the jury evidently found to exist, and their right under the original contract would vary as to time of maturity as well as rate of interest from time novation occurred. Under the charge requested, the jury would have been authorized to find for plaintiff if there was any balance of principal or interest actually unpaid, although that was not due on the contracts made the basis of the action but on the new contract, which operated a novation and was expressly repudiated by plaintiff.

The court did not err in submitting to the jury whether the release was in contemplation of law delivered in accordance with the agreement of the parties, nor in the charge upon that subject, nor in refusing to charge that there was no evidence on which the jury might find that it was delivered. It was really a matter of but little importance whether the release was delivered; for if the agreement was made, as defendants alleged, and complied with, the notes were discharged and the lien extinguished before the sale was made by the trustee.

There was evidence from which the jury might find that 100 head of cattle were delivered in accordance with the contract, and there is no controversy as to the payment of the $500, and the court did not err in giving the charges in which these matters were submitted.

If the release was never delivered, the fact of its execution, acknowledgment, and contents were matters that the jury might consider under the charge of the court, without violating any right of appellant, in view of the conflict in the evidence.

Plaintiff based his case on the proposition, that there was no such agreement and satisfaction of the notes as was alleged by defendants, and in that the jury, under evidence that justified it, found against him.

The court tried the case upon the theory, that if defendants' answer was true, plaintiff showed no cause of action on which he could recover in this action, which we think was correct; and plaintiff now presents his case and criticises the charge of the court, as might he had he brought his action on the subsequent promise to pay and not upon the notes.

We find no error, and the judgment will be affirmed.

*Affirmed.*

Delivered April 29, 1892.