CONSUMERS' FERTILIZER CO. v. J. M. BADT & CO.

(Court of Civil Appeals of Texas. Texarkana. March 13, 1913. On Appellee's Motion for Rehearing, April 3, 1913. On Appellee's Motion for Further Rehearing, May 9, 1913.)

1. SALES (§ 88*)—ACTIONS FOR PRICE—SUFFICIENCY OF EVIDENCE.

Evidence, in an action for the price of fertilizer, *held* to support a finding that the parties orally agreed that the purchaser need not pay for the fertilizer until he sold it.

[Ed. Note.—For other cases. see Sales, Cent. Dig. §§ 248–250; Dec. Dig. § 88.*]

2. SALES (§ 89*)—CONSIDERATION OF CONTRACT.

Where the purchaser of fertilizer, the price of which was payable by the original contract on demand, after arrival, did not agree to pay interest on the price up to the time he sold it, there was no consideration for a subsequent agreement by the seller that the purchaser need not pay the price until the fertilizer was sold.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 251, 252, 259; Dec. Dig. § 89.*]

On Appellee's Motion for Rehearing.

3. APPEAL AND ERROR (§ 493*)—RECORD—CONTENTS—JURISDICTION OF LOWER COURT.

In a case involving less than the mimimum value required to give original jurisdiction to the county court, the fact that the county court acquired jurisdiction by an appeal from a justice's court must appear from the transcript which the justice is required to send to the county court by Rev. Civ. St. 1911, arts. 2396, 2397, in order to give the Court of Civil Appeals jurisdiction of an appeal from the county court, and the fact of jurisdiction cannot be shown by the appeal bond filed in the justice's court.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2282–2284; Dec. Dig. § 493.*]

On Appellee's Motion for Further Rehearing.

4. COSTS (§ 236*)—APPELLATE COSTS.

The fact that the county court, instead of dismissing a suit brought by appellant for want of jurisdiction, which it did not have, rendered judgment that appellant take nothing, and that the Court of Civil Appeals, instead of dismissing appellant's appeal, reversed the judgment and dismissed the case, was not ground for adjudging costs against appellee, but costs should be adjudged against appellant in both courts.

[Ed. Note.—For other cases, see Costs, Cent. Dig. §§ 907–933; Dec. Dig. § 236.*]

Appeal from Titus County Court; W. E. Riddle, Judge.

Action by the Consumers' Fertilizer Company against J. M. Badt & Co. From a judgment for defendant, plaintiff appeals. Reversed, and case dismissed.

S. P. Pounder, of Mt. Pleasant, for appellant. J. M. Burford and Rolston & Ward, all of Mt. Pleasant, for appellee.

WILLSON, C. J. Appellee J. M. Badt, a merchant engaged in business at Mt. Pleasant, under the name of "J. M. Badt & Co.," bought fertilizer of appellant, agreeing to pay it therefor sums aggregating $404.68 less cost of carriage thereof from Shreveport, La., to Mt. Pleasant, Tex. The suit was by appellant to recover $114.58 as the part of the purchase price unpaid by appellee. The appeal is from a judgment denying appellant a recovery as sought by it, and in favor of appellee for costs.

The contract covering the sale of the fertilizer was made January 25, 1909. It was in writing. Among other stipulations in it

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

was one as follows: "Settlement for all shipments is due on demand after their arrival, and any part not paid in cash is due in buyers' notes, maturing October the 15th, November 1st, and November 15th, including 8 per cent. per annum interest after May the 1st. A discount of 8 per cent. per annum to May 1st will be allowed on cash payments." Appellee claimed that the terms of the contract as to the time when the fertilizer was to be paid for had been so changed by a verbal agreement subsequently entered into between himself and appellant, through its manager, one Green, as to relieve him of the obligation to pay therefor on demand after he received the fertilizer, and as to bind him to pay therefor only after he had sold same. He further claimed that a portion of the fertilizer representing the sum unpaid of the purchase price remained in his hands unsold, and therefore that appellant was not entitled to a recovery against him as sought by it.

It appeared that the fertilizer was shipped out of Shreveport January 26, 1909, and reached appellee a few days later. Appellee testified that a few days after he received same appellant made demand on him for a settlement in accordance with the terms of the written contract, and about May 1st renewed the demand. It was then, he claimed, that he and Green entered into the agreement changing the time for payment to be made by him for the fertilizer. His testimony with reference to the agreement with Green was as follows: "I called him up over the telephone, and told him I had some of the fertilizer on hand I had not sold, and that I was willing to settle for the amount I had sold, but that the Caddo people had never demanded of me to pay for fertilizer until I had sold it, and I thought he ought to do the same thing, and he·said all right, he would do as well by me as his competitors, and that I need not pay for the fertilizer until I had sold it. I have never sold all of the fertilizer, and have paid for all I sold. I have paid·for every sack I have sold, and have the balance now in my warehouse, and I have tendered it to the plaintiff. * * * It is the custom to pay for fertilizer only when sold." With reference to the same matter, Green testified as follows: "Some time after I had demanded a settlement for the fertilizer, defendant called me up on the telephone, and said, in substance, that the Caddo people had always waited till the 1st of May for settlement of the fertilizer sold, and carried the balance over till the 1st of the next May in open account without interest, and he thought plaintiff ought to do the same. I told defendant that, if the Caddo folks did that, plaintiff would too; that I would do as well by him as my competitors. I did not agree in that or any other conversation with defendant that he could hold the fertilizer on consignment, or as plaintiff's property, and not pay for it until he sold it. The written contract is the only contract I made with defendant, except I did extend the time of payment or settlement as stated." The suit was commenced after May 1, 1910.

[1] It will be noted that, according to the testimony of both appellee and Green, the agreement reached over the telephone was one merely for an extension of the time when the fertilizer was to be paid for. The only difference between them was as to the time to which the extension should operate. According to appellee, it was until he sold the fertilizer; while, according to Green, it was until May 1, 1910. If it was until May 1, 1910, as claimed by appellant, then the balance unpaid was due when the suit was commenced, and the judgment should have been for appellant. If it was when appellee sold· the balance remaining of the fertilizer, and was binding on appellant, then the judgment was right, for it was undisputed that appellee had not sold part of the fertilizer. As appellee's testimony was sufficient to support a finding that the agreement was that he need not pay for the fertilizer until he sold it, whether the judgment should be disturbed or not therefore depends upon whether it appeared that the agreement was binding on appellant or not.

In Austin Real Estate & Abstract Co. v. Bahn, 87 Tex. 584, 29 S. W. 646, 30 S. W. 430, the payer of a note requested and was granted an extension of one week; he agreeing to pay within that time. In Benson v. Phipps, 87 Tex. 578, 29 S. W. 1061, 47 Am. St. Rep. 128, the parties to the note agreed upon an extension of 12 months. In the Bahn Case it did not appear that the payer had bound himself not to pay the debt before the expiration of the time of the extension agreed upon, or, if he should pay it before that time, nevertheless to pay interest to that time. The Supreme Court was of the opinion that it therefore did not appear that there was a consideration for the payee's undertaking, and held he was not bound by the agreement. In the Phipps Case the court thought it did appear that the payer of the note had so bound himself, and therefore that there was a consideration for the undertaking on the part of the payee.

[2] This case is like the Bahn Case in that it did not appear that appellee had bound himself not to pay for the fertilizer before he sold it, or, if he did, to pay interest on the purchase price to that time. As on the authority of that case (and Gibson v. Irby, 17 Tex. 174) it must be held that it did not appear there was a consideration to support appellant's undertaking, it follows we are of opinion the judgment should be reversed. That the balance of the purchase price of the fertilizer remaining unpaid was $114.58, as claimed by appellant seems to have been established without dispute. Therefore the

cause will not be remanded, but judgment for that sum, and costs of the court below and of this appeal, will be here rendered in favor of appellant.

### On Motion of Appellee for Rehearing.

[3] From appellant's pleadings in the county court it appeared that the amount in controversy between the parties was $114.58. It is obvious therefore that the county court did not have jurisdiction of the cause, unless it acquired it by appeal from a justice's court. That it so acquired jurisdiction thereof is not shown in the record before us otherwise than by an appeal bond filed in the justice's court by appellee, from which it appears that appellant there recovered a judgment against appellee for the sum of $96.33. In American Soda Fountain Co. v. Mason, 55 Tex. Civ. App. 532, 119 S. W. 714, it was held that the fact that a county court had acquired jurisdiction of an appeal from a justice's court must appear from the transcript the justice is required by articles 2396 and 2397, Revised Statutes 1911, to send to the county court when an appeal is taken from a judgment rendered by him. There, as here, the only evidence in the record before the Court of Civil Appeals of the rendition of a judgment in the justice's court, and its nature, was recitals in a bond made on an appeal to the county court. With reference to this, the Court of Civil Appeals said in the Mason Case: "We cannot, therefore say from the evidence so specifically required by the law that the controversy between the parties to this suit ever proceeded to a final determination and judgment in the justice's court. We do not think mere recitations in an original paper that the law requires to be sent up with the transcript can be made to supply the officially certified copy of the judgment and other entries which the statute provides. We are not allowed, as we understand the rule, to indulge presumptions in aid of the county court's jurisdiction; but the same must be made to affirmatively appear." On the authority of that case, we conclude it does not affirmatively appear from the record before us that the county court acquired jurisdiction of this cause, and therefore that the motion for a rehearing should be granted, the judgment heretofore rendered by us set aside, the judgment of the county court reversed, and the case dismissed. It accordingly is so ordered.

### On Motion of Appellee for Further Rehearing.

[4] The motion is overruled, but the judgment of this court as entered will be so corrected as to adjudge the costs of both this court and the county court against appellant instead of against appellee. On the record sent to this court the suit must be treated as one commenced by appellant in the county court, which did not have jurisdiction to hear and determine it, and which, therefore, should have dismissed it at appellant's cost. Had that court pursued that course, and had appellant prosecuted an appeal from the judgment, it is clear that his court in dismissing the appeal should have adjudged the costs thereof against appellant. That the trial court, instead of rendering that kind of a judgment, adjudged that appellant take nothing by its suit, and that this court, instead of dismissing the appeal, reversed the judgment and dismissed the case, we think was not a reason why the costs should be adjudged against appellee. The judgment of the county court that appellant take nothing by its suit, it appears from the record before us, was void as an adjudication of the controversy between it and appellee, and appellant was as free as it was before that judgment was rendered to go into a court having jurisdiction thereof and have the controversy determined. Therefore the prosecution by it of the appeal to his court was not necessary for its protection or the enforcement of any right it had. This being true, there is no reason why appellee should be made to pay the costs of that appeal.