## INTERNATIONAL–GREAT NORTHERN R. CO. v. PENCE et al.

### No. 3618.

Court of Civil Appeals of Texas. El Paso.

Jan. 20, 1938.

Rehearing Denied Feb. 10, 1938.

Andrews, Kelley, Kurth & Campbell and Sewell, Taylor, Morris & Garwood, all of Houston (W. J. Knight, of Houston, of counsel), for appellant.

Jones & Jones, of Marshall, and Smith & West, of Henderson, for appellees.

NEALON, Chief Justice.

This suit was brought in the district court of Rusk county against appellant by J. J. Pence, guardian of the person and estate of Nellie Gean Russell, a minor, and by J. E. Russell and his wife, Belle Russell, and Mrs. J. W. Anderson, to recover damages for injuries to the person of Nellie Gean Russell and for the death of her parents, Fred Russell and Anna Belle Russell. J. E. Russell and Belle Russell are the mother and father of Fred Russell, deceased. Mrs. J. W. Anderson

is the widowed mother of Mrs. Anna Belle Russell, deceased.

The suit was based upon a collision occurring on a crossing near Overton, in Smith county, Tex., on or about the 10th day of March, 1933, in which a truck occupied by Fred Russell, his wife, Anna Belle Russell, and his three children, Nellie Gean, Willie Murrell, and Oscar Earl, was struck by an engine operated by the defendant. The two last-named children died before the suit was filed.

The plaintiffs alleged a general count of negligence, and in the alternative alleged various specific acts of negligence on the part of the defendant, and affirmatively pleaded the theory of discovered peril. The defendant pleaded certain specific exceptions, a general demurrer, and numerous specific acts of contributory negligence on the part of Fred Russell and Anna Belle Russell.

Upon the trial, evidence was produced by the plaintiffs to show the acts of negligence on the part of the defendant, and that defendant discovered the deceased persons in a position of peril in time to have avoided the accident by the exercise of the means at hand consistent with the safety of the engine and the occupants thereof. There were no cars attached to the engine. The defendant presented evidence to the effect that the defendant was not negligent; that plaintiffs were guilty of contributory negligence; and that the theory of discovered peril had no application.

The case was submitted to the jury upon special issues, involving the theory of discovered peril, various alleged acts of negligence on the part of the defendant, and various alleged acts of negligence on the part of the occupants of the truck. The court submitted also an issue asking whether or not the act of Fred Russell in driving the truck upon the track immediately in front of the locomotive, if he did so act, was the sole proximate cause of the injury.

The jury found in favor of plaintiffs upon the various issues of negligence and contributory negligence and the issue of discovered peril, and also found that the collision was not an unavoidable accident. As to damages the jury awarded Nellie Gean Russell $15,000 on account of the death of her father, $10,000 on account of the death of her mother and $2,000 on account of injuries to her person.

Plaintiffs J. E. and Belle Russell were each awarded $250 on account of the death of Fred Russell.

Upon these findings of the jury, the court entered judgment in favor of the plaintiffs, other than Mrs. J. W. Anderson, and awarded them damages as found by the jury. The court overruled the defendant's motion for new trial.

Defendant appealed from said judgment.

### Opinion.

The record in this case is quite voluminous. It contains a transcript comprising 256 pages and a statement of facts consisting of 288 pages. The court submitted 47 special issues in its main charge, two special issues at the request of plaintiff, and one at the request of defendant. Defendant filed 28 objections to the court's charge and submitted 84 specially requested issues. Thirty-eight propositions are urged by appellant in support of its various assignments.

The first ten propositions assert that the court erred in failing upon proper request, or as suggested by proper request, to submit issues as to whether the sole proximate cause of the collision was conduct of Anna Belle Russell in each of the following particulars: Negligent failure to keep a lookout for the approaching locomotive; negligent failure to listen for the approaching locomotive; attempting to drive the automobile across the railroad track when it was in danger of being struck by the locomotive; suddenly driving the automobile upon the railroad track in front of the locomotive; driving the automobile upon the track at a time when the operators of the locomotive could not, in the exercise of ordinary care, avoid striking the automobile. Propositions 11 to 16, inclusive, charge error in failing under the circumstances to submit whether the sole proximate cause of the collision was the negligence of Fred Russell in the following particulars: Failure to keep a lookout; failure to listen for the approaching locomotive; driving the automobile upon the railroad track when the operators of the locomotive could not in the exercise of ordinary care avoid striking the automobile.

At the time of the collision there were but two adult occupants of the car—Anna Belle Russell and Fred Russell. The other three occupants were children of tender age, none of whom was older than six years. Therefore, the driver of the car was either Anna Belle Russell or Fred Russell. As to which was the driver at the time of the collision there is no certain direct evidence. The circumstantial evidence points to Fred Russell as the driver. He was at the wheel a few minutes before the accident when he got out of the car to open a gate that opened up the road over which he was driving. When last seen by any of the witnesses he was on the left running board. This would indicate that he was about to occupy the driver's seat. Apparently the truck stopped twice—once when Russell opened the gate and again as the driver attempted to drive up the embankment upon which the railroad is situated. Mrs. Russell was not seen to take the wheel or occupy the driver's seat at any time. There is no evidence that she was driving the car at the time of the collision. The trial judge avoided circumlocution and confusion by submitting issues as to keeping a lookout, listening, and driving upon the track in the following forms, to which the following answers were given:

"Special Issue Number Twenty-one: Do you find from a preponderance of the evidence that the driver of the automobile in question failed to bring the same to a complete stop immediately before attempting to pass over the railroad track?" Answer: "No."

"Special Issue Number Twenty-three: Do you find from a preponderance of the evidence that the adult in the automobile, other than the driver, failed to require the driver to stop the same immediately before attempting to cross the track?" Answer: "No."

"Special Issue Number Twenty-five: Do you find from a preponderance of the evidence that the driver of the automobile failed to exercise such care as a person of ordinary prudence would have exercised under the same or similar circumstances, to keep a lookout for the approaching locomotive?" Answer: "No."

"Special Issue Number Twenty-seven: Do you find from a preponderance of the evidence that the adult occupant of the car other than the driver failed to exercise such care as a person of ordinary prudence would have exercised under the same or similar circumstances, to keep a lookout for the approaching locomotive?" Answer: "No."

"Special Issue Number Twenty-nine: Do you find from a preponderance of the

evidence that the driver of the automobile failed to exercise such care as a person of ordinary prudence would have exercised to listen for the approaching locomotive?" Answer: "No."

"Special Issue Number Thirty-one: Do you find from a preponderance of the evidence that the adult occupant of the automobile other than the driver failed to exercise such care as a person of ordinary prudence would have exercised to listen for the approaching locomotive?" Answer: "No."

"Special Issue Number Thirty-five: Do you find from a preponderance of the evidence that the driver of the automobile attempted to drive the same across the railroad tracks at a time when it was in danger of being struck by the locomotive?" Answer: "No."

"Special Issue Number Thirty-seven: Do you find from a preponderance of the evidence that the driver of the automobile drove the same onto the railroad track immediately in front of the locomotive?" Answer: "No."

"Special Issue Number Thirty-nine: Do you find from a preponderance of the evidence that the driver of the automobile transported the minor plaintiff, Nellie Gean Russell, onto the track immediately in front of an approaching locomotive?" Answer: "No."

Since the jury found affirmatively and directly that neither Anna Belle Russell nor Fred Russell failed to keep a proper lookout or negligently failed to listen for the locomotive, or attempted to drive the automobile across the tracks when it was in danger of being struck by the locomotive, or negligently drove the automobile upon the track immediately in front of the locomotive, the question of proximate cause as to such conduct passed out of the case. If the court erred in refusing the requested instructions or in formulating others that he believed to be correct, the error was harmless because of these findings. Western Union Telegraph Co. v. McGaughey, Tex.Civ.App., 198 S.W. 1084; Walker v. Brown, 66 Tex. 556, 1 S.W. 797; Smith v. Traders' Nat. Bank, 74 Tex. 457, 12 S.W. 113; Porter v. Metcalf, 84 Tex. 468, 19 S.W. 696.

The issue of discovered peril was submitted in the two following interrogatories, to each of which the jury returned an affirmative answer:

"Special Issue Number One: Do you find from a preponderance of the evidence that the occupants of the Fred Russell truck were placed in a position of peril just before the collision?"

"Special Issue Number Two: Do you find from a preponderance of the evidence that those operating the engine of the defendant knew of the perilous situation of the occupants of said truck, if any, in time by the exercise of ordinary care in the use of all means at hand consistent with the safety of said engine and the occupants of the same, to have avoided injuries to said truck occupants?"

Appellant objects that the evidence did not warrant the submission of the issue of discovered peril. The objection is without merit. It is true that the engineer testified that he did not discover the peril of decedents until it was too late to avert the collision; that he did not see the truck until the train was within 50 to 75 feet of the crossing, when he cut the throttle off, grabbed the whistle, and put the brake valve in emergency. However, discovered peril may be proved by circumstantial evidence. Texas & N. O. Ry. Co. v. Goodwin, Tex.Civ.App., 40 S.W.2d 182, 183; Stinnett v. Gulf, C. & S. F. R. Co., Tex.Civ.App., 38 S.W.2d 615; Brown v. Griffin, 71 Tex. 654, 9 S.W. 546. There was testimony that the vehicle in which decedents were riding seemed to be standing still on the track at the time the whistle blew; that the space between the rails was somewhat lower than the rails, thus warranting an inference that the truck might have stalled; that a locomotive of the type involved, traveling at the rate of 35 miles per hour, could be stopped within 240 feet or a few feet more if on a slight down grade; that at 15 miles an hour it could be stopped within 180 feet; that the distance (by measurement) between the locomotive and the truck at a time when both were in view of a witness who said she saw both the train and the truck when the latter appeared to be standing still was 384½ feet; that one witness saw the train a short time before the accident took place and it did not decrease its speed; that he heard no such noise as usually accompanies the application of air brakes. The evidence was sufficient to warrant submission of the issue.

Appellant insists that the issue as submitted did not inquire as to whether

those on the locomotive realized the peril in which the automobile and its occupants were placed and that it did not require an answer as to whether appellant, after discovering decedents' peril, used ordinary care in the use of the means at hand to avoid the collision, and that it did not include an issue as to whether such failure, if any, to use such care under the circumstances was the proximate cause of the collision. These criticisms are without merit. The question submitted inquired as to whether those operating the engine "knew" of the perilous situation of the occupants of the truck. This is a sufficient inquiry as to the element of realization or appreciation. "The knowledge of such a danger necessarily involves an appreciation of it." St. Louis S. W. Ry. Co. v. Shiflet, 94 Tex. 131, 58 S.W. 945, 947. "According to standard lexicographers, to 'know' means to perceive or apprehend; to understand. To 'understand' means to apprehend the meaning of; to comprehend; to know. To 'appreciate' means to be sensible of; to perceive the nature or effect of." Western Indemnity Co. v. MacKechnie, Tex. Civ.App., 214 S.W. 456, 460. See, also, Texas & P. Ry. Co. v. Staggs, 90 Tex. 458, 39 S.W. 295, and Texas & P. Ry. Co. v. Breadow, 90 Tex. 26, 36 S.W. 410.

■ The only reasonable construction of issue No. 2 is that it clearly calls for the use of ordinary care upon the part of those in charge of the locomotive "after" they knew of the perilous situation of the occupants of the car. There is nothing that would justify a contrary interpretation. Under the state of facts that the jury found to exist in answer to issues 1 and 2, the question of proximate cause was one of law for the court. St. Louis S. W. Ry. Co. v. Lamkin, Tex.Civ.App., 220 S.W. 179; St. Louis S. W. Ry. Co. v. Missildine, Tex.Civ.App., 157 S.W. 245; Crow v. Southwestern Transp. Co., Tex. Civ.App., 73 S.W.2d 607.

■ By its seventeenth assignment appellant challenges the court's definition of "proximate cause," insisting that it erroneously instructs the jury that for an act to be a proximate cause it must also be a concurring cause. The definition is in the following language: "By the term 'proximate cause' is meant that cause which is (sic) a natural and continuous sequence, unbroken by any new and independent cause, produced the injuries complained of, which injuries, or some similar injury, ought to have been foreseen by a person of ordinary care and prudence in the light of the attendant circumstances. It need not be the sole cause, but it must be a concurring cause, which contributed to the production of the injury in question, and but for which the said injury would not have occurred. There may be more than one proximate cause of an injury. By the term 'new and independent cause' is meant the act or omission of a separate and independent agency which destroys the causal connection between the negligent act or commission complained of and the injuries complained of, and thereby becomes in itself the immediate cause of such injuries."

We think that the instruction reasonably interpreted, and with effect being given to each of its phrases and clauses, is not subject to the criticism leveled at it by appellant's assignment. It is in almost the identical language used by the Supreme Court in its discussion of proximate cause in Gonzales v. City of Galveston, 84 Tex. 3, 19 S.W. 284, 31 Am.St. Rep. 17. First the jury is told that: "By the term 'proximate cause' is meant that cause which in natural and continuous sequence, unbroken by any new and independent cause, produced the injuries complained of. * * *" Next, the jury is told that it need not be the "sole" cause. It is not said that it "may" not be the sole cause. The language here used implies necessarily that it may be the "sole" cause. This interpretation is emphasized by the final sentence of the definition, "There may be more than one proximate cause of an injury." Substitute the word "may" for the word "must," in the clause criticised, and even the most meticulous could find no fault with the definition. The definition must be read as a whole. Broughton v. Humble Oil & Refining Co., Tex.Civ.App., 105 S.W.2d 480, writ refused.

This holding is not in conflict with the decision of the Supreme Court in adopting the opinion of the Commission of Appeals in Southland Greyhound Lines v. Cotten, 126 Tex. 596, 91 S.W.2d 326, and the court's own opinion in Orange & N. W. R. Co. v. Harris, 127 Tex. 13, 89 S. W.2d 973. The error pointed out and passed upon in those cases was the trial court's failure under the facts to refer to and define "new independent cause."

A definition containing the exact language herein complained of was approved in Karotkin Furn. Co. v. Decker, Tex.Com. App., 50 S.W.2d 795, opinion by Judge Critz.

By its eighteenth and nineteenth assignments appellant attacks as erroneous the trial court's definition of "contributory negligence," which reads as follows: "By the term 'contributory negligence' as used herein is meant such an act or omission on the part of the injured party which amounts to a want of ordinary care, and which concurring and acting with the negligence of the defendant is a proximate cause of the injury complained of, and without which the injury would not have occurred."

The assignment is overruled. International & Great Northern Railway Co. v. Garcia, 75 Tex. 583, 13 S.W. 223, 226; Lancaster v. Jarrett, Tex.Civ.App., 258 S. W. 271, 276; Texas & N. O. Ry. Co. v. Rooks, Tex.Com.App., 293 S.W. 554; Koons v. Rook, Tex.Com.App., 295 S.W. 592; Rio Grande, El Paso & Santa Fe R. Co. v. Lucero, Tex.Civ.App., 54 S.W. 2d 877, writ of error dismissed; Mahone v. Bowman, Tex.Civ.App., 70 S.W.2d 323, writ of error dismissed.

Propositions twenty to thirty-two, inclusive, charge that the court erred in entering judgment because the answers to the issues other than discovered peril were so conflicting, contradictory, and confusing as not to support a judgment. Some of the answers were unnecessary, but under none of the findings would appellant be entitled to judgment. The alleged conflicts consisted in finding favorably to plaintiff upon issues submitted conditionally and to which, in view of the court's instruction, the jury was expected to make no answer in view of its answer to the preceding connected issues. There were no irreconcilable conflicts.

In this connection appellant cites Kansas City Life Ins. Co. v. Jinkens, Tex. Civ.App., 202 S.W. 772, and Interstate Trust & Banking Co. v. West Texas Utilities Co., Tex.Civ.App., 88 S.W.2d 1110, as controlling. These cases are not applicable. In each of them the jury's findings were irreconcilable. The findings which the court found to be in conflict were mutually destructive, and, of course, could not be the basis of a verdict. This is not true in the instant case. Said assignments are overruled. Perez v. Hous-

ton & T. C. Railway Co., Tex.Civ.App., 5 S.W.2d 782; Texas Indemnity Ins. Co. v. Bridges, Tex.Civ.App., 52 S.W.2d 1075, writ refused; McElwrath v. City of McGregor, Tex.Civ.App., 58 S.W.2d 851, writ dismissed; Yarbrough v. Dallas Ry. & Terminal Co., Tex.Civ.App., 67 S.W.2d 1093; Allen v. Texas & N. O. Railway Co., Tex.Civ.App., 70 S.W.2d 758, writ dismissed.

Assignments 33 to 38, inclusive, charge that argument of appellees' counsel was improper in that he told the jury that certain issues that he mentioned were dealing with the conduct and acts of the defendant, certain others with the acts and conduct of the defendant, and certain others with the amount of damages to be awarded. He then discussed the facts respecting each group, and upon concluding his comments as to each group expressed his opinion as to what answers were demanded by the evidence—whether "yes" or "no." An examination of the bills of exception shows nothing in the language or method that calls for reversal. Counsel did not state what the effect of the answers would be. In Houston E. & W. T. Ry. Co. v. Sherman, 42 S.W.2d 241, 248, the Commission of Appeals and the Supreme Court did not condemn the grouping of the issues and the suggestions as to how they should be answered, but the appeal to answer them in a certain way "in order to help the plaintiff and keep her children in school." In Kasch v. Anton, Tex.Civ.App., 81 S. W.2d 1097, the effect of the argument was to tell the jury that plaintiff would win if the questions were answered as plaintiffs' counsel requested. The same may be said of the argument under review in McFaddin v. Hebert, 118 Tex. 314, 15 S.W.2d 213.

There are many cases holding that merely for counsel to tell a jury which questions should be answered affirmatively and which negatively in view of the evidence is not improper. See Galbraith-Foxworth Lumber Co. v. Gerneth, Tex. Civ.App., 66 S.W.2d 471, and cases there cited. As final and controlling authority we find the proper practice thus defined by the Commission of Appeals and expressly approved by the Supreme Court in Dallas Ry. & Terminal Co. v. Bankston, 51 S.W.2d 304, at page 310: "Broadly speaking, counsel may exercise the right to advise the jury how, in his opinion, from the evidence, the issue submitted

should be answered. He may specifically say issues from 1 to 20 should be answered 'yes,' or issues from 21 to 35 should be answered 'no,' but it would be highly improper for counsel to appeal to the jury that if they wanted plaintiff or defendant to recover in the suit to answer the issues in a certain way."

All assignments of error are overruled. Judgment is affirmed.